Whitaker, Judge,
delivered the opinion of the court:
The plaintiff sues the defendant for the compensation provided for in the Postal Laws and Regulations for the carriage of mail between the United States and Central American ports during the period November 5,1932, to August 29,1938; *309 The amount claimed in the petition is $80,432.28, but the commissioner has found that if the plaintiff is entitled to recover at all, there is due it the sum of $60,274.76, and no exception is taken thereto.
The plaintiff owned all of the stock of the Balboa Shipping Company, a corporation chartered under the laws of the Eepublic of Panama. This company had 9 steamships registered under the flag of the Eepublic of Panama which were operated by the plaintiff under a bare boat charter from the Balboa Shipping Company. These ships carried the mails in question.
Plaintiff had no formal contract for the carriage of these mails. Its right to recover rests upon the implied contract, if any, which arose from the following transactions between the parties:
On or about the first of each month the Post Office Department sent plaintiff a blank form to be filled out showing the names of its steamers, the dates of their sailing, the ports of call and destination, and their registry. This form was filled out by plaintiff and returned to the Post Office Department. Thereafter, and shortly before the date of sailing of any particular vessel, defendant sent plaintiff a further form to be filled out giving the name of the vessel, the sailing date, the pier from which the vessel would sail, the time it was expected to sail, its ports of call, its speed, and its registry. The latter form, which was in use between November 5,1932, and June 30,1935, contained a statement, a portion of which reads as follows:
Saeety. — Steamship companies are answerable to the United States for the safety of the mail intrusted to them, and accountable for any loss or damage resulting to any of such mail by reason of failure on the part of any of their officers, agents, or employees to exercise due care in the custody, handling, or transportation thereof. In case of delinquencies, fines may be imposed or deductions made from the company’s pay.
After June 30, 1935, a revised form was used which contained the following:
It is understood that the mails shall be carried in accordance with the terms, conditions, and responsibilities *310 prescribed by the Postal Laws and Regulations of the united States (or in accordance with the terms of the contract covering the service, where there is such a contract).
During all the period in question the Postal Laws and Regulations provided for certain compensation for the carriage of the mails.
On November 10, 1931, a Postal Convention was entered into between the United States of America, Spain, and the Central and South American countries, which was approved by the President on February 9, 1932 (47 Stat. 1924-56). Article 3 of this Convention reads as follows:
Free and gratuitous transit. — 1. The gratuity of territorial, fluvial and maritime transit is absolute in the territory of the Postal Union of the Americas and Spain; consequently, the countries which form it obligate themselves to transport across their territories and to convey by the ships of their registry or flag which they utilize for the transportation of their own correspondence, without any charge whatsoever to the contracting countries, all that which the latter may send to any destination.
2. In cases of reforwarding, the contracting countries are bound to reforward the correspondence by the ways and means which they utilize for their own dispatches.
The same provision was incorporated in the later Convention of 1936 between the same parties, ratified August 12, 1937, and approved by the President August 20, 1937 (50 Stat. 1657).
Under section 4016 of the Revised Statutes, as amended, 18 U. S. C. 326, plaintiff was required to take the mail from the United States Post Office when its ships were leaving our ports under penalty of a fine of $1,000 for failing or refusing to do so. The Act of February 6, 1929 (c. 157, 45 Stat. 1153), authorized the Postmaster General to require any steamship to carry mail between the United States and any foreign port “at the compensation fixed under authority of law,” and this Act authorized the collector of the port, or other proper officer, to refuse clearance of the vessel if it refused to accept the mail tendered.
*311 Plaintiff accepted and transported the mails in question under the foregoing circumstances.
The Postmaster General recognized liability to pay for the transportation of all the mails carried on the trips in question, except that carried on those voyages where the “vessel called at the Canal Zone.” Accordingly, the Postmaster General certified to the General Accounting Office for payment the sum of $59,157.12, but he did not certify for payment $1,117.64, which was the amount claimed for the transportation of those mails where the vessel carrying it called at the Canal Zone.
The Comptroller General disallowed the entire amount. He was of the opinion that liability to pay the charges for transporting the mails rested on the Republic of Panama under Article 3 of the Postal Convention quoted above. The Republic of Panama has denied liability on the ground that it agreed to pay for the carriage of mails only by those vessels which the Republic of Panama used on the same trips for the carriage of its own mail. Since none of these vessels called at ports of the Republic of Panama on any of the trips in question, and did not carry any of its mail, it insisted that it was not liable under the Convention for the transportation charges.
It was the defendant that demanded of plaintiff the service for which it claims compensation and, therefore, the primary liability to pay for these services is on the defendant, unless the inference can be fairly drawn from the conduct of the parties that the plaintiff agreed to look alone to someone else for its compensation. The only basis for saying that the plaintiff did look to someone else for compensation is the fact that it accepted the mails and delivered them with knowledge of the fact that the Republic of Panama had agreed to pay for the transportation of mails “by the ships of their registry or flag which they utilize for the transportation of their own correspondence.”
There was no special agreement on the part of Panama to pay for the carriage of the particular mails in question. It merely generally agreed to pay for the transportation of *312 mails by vessels of its registry or flag which it utilizes for the transportation of its own correspondence. When plaintiff accepted the mails, it did not know whether Panama meant to agree to pay for the carriage of United States mails • by any ship of its registry or flag that it ever used for the transportation of its own mails, or whether it meant merely to agree to pay for the transportation of United States mails on those voyages of its ships which also carried its mails.
Certainly, in a case where the agreement of a third party to pay the debt of another is uncertain, no agreement can be implied on the part of the creditor to look alone to the third party for compensation and to absolve from liability the person for whom the service was rendered. Indeed, in the absence of an express agreement on the part of Panama to pay for the carriage of these particular mails, or similar ones, we do not think an inference can arise that plaintiff agreed to look alone to Panama for compensation and to absolve the defendant from liability therefor. And even though there had been an express agreement on Panama’s part to pay for the transportation of these particular mails, we do not think an inference would arise from the facts before us that plaintiff agreed to look alone to Panama and to relieve the United States of liability therefor. Certainly the plaintiff did not expressly agree to absolve the defendant from liability, and we know of no fact or circumstance from which it can be implied that it agreed to do so. The plaintiff has the right to demand compensation from the party which demanded the service of it, whatever may have been the agreement between this party and some third party, unless by express agreement or by its conduct it impliedly agreed to relieve of liability the party that demanded the service. So far as the record discloses, it has done nothing to lead defendant to believe that it would look alone to Panama for compensation.
Nor did the defendant in this case, as it did in Standard Fruit and Steamship Company v. United States, No. 45267, this day decided, disavow liability for the charges; hence, plaintiff had a right to assume that he who demanded the *313 service intended to pay for it, if the third party did not, and it must be implied that defendant so intended.
It appears from the proof that the plaintiff operated 9 vessels which flew the flag of Panama. Six of these vessels never at anytime were used by the Republic of Panama for the transportation of its own correspondence. Article 3 of the Convention is not susceptible of the construction that Panama agreed to pay for the transportation of mail by these vessels. It agreed only to pay for the transportation of mails by the vessels of its registry or flag which it utilizes for the transportation of its own correspondence.
On voyages other than the voyages in question the Republic of Panama did use three of the nine vessels for the transportation of its mails. Whether or not it is liable for the mails carried by these vessels on other trips involves the proper construction of article 3 of the Postal Convention. Panama construes it one way and the United States another. In case of such a dispute as to the liability of the third party, certainly plaintiff cannot be said to have taken its chances of collecting its money from Panama and to have intended to relieve the United States of liability therefor.
We think the Postmaster General was clearly right in certifying for payment the sum of $59,157.12, but we think he was wrong in disallowing the sum of $1,117.6’4, the amount claimed for the mail carried on those voyages where the vessels called at the Canal Zone. Panama refused to pay for the mail carried on these voyages as well, and the plaintiff has not relieved the defendant of liability for payment for them, where payment is not received from Panama.
We are of the opinion that the plaintiff is entitled to recover from the defendant the sum of $60,274.76. Judgment for this amount will be entered. It is so ordered.
Madden, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.