Whitaker, Judge,
delivered the opinion of the court:
Plaintiff sues for $103,565.15, an amount alleged to be due it by the defendant for the carriage of mails between April 16, 1937, and March 1942.
Plaintiff is the successor of Yaccaro Bros, and Company. It operates steamers between the United States and Jamacia, Cuba, and Central American countries. For a number of years its ships have carried mails between the United States and some or all of these countries. It had no formal contract therefor. Its right to recover, if at all, arises from the following transactions:
On or about the first of each month plaintiff received from the Post Office Department a blank form to be filled out, giving the names of its steamers and dates of sailing, their ports of call, destination and registry. Plaintiff filled out this form and returned it. Thereafter, shortly prior to the sailing date of a steamer, plaintiff was furnished another form to be filled out, giving the name of the steamer, the registry, the time of sailing, the pier from which it would sail, the ports of call, and the speed of the steamer. This form contained the following notice:
Mails for dispatch by outgoing steamships shall be delivered by the post office at the time agreed upon to the respective steamship companies, who must convey them to their steamships.
It is understood that the mails shall be carried in accordance with the terms, conditions, and responsibilities prescribed by the Postal Laws and Regulations of the United States (or in accordance with the terms of the contract covering the service, where there is such a contract).
*681 This form was also duly filled out by plaintiff and returned to the Post Office Department.
Thereafter, at the time agreed upon, plaintiff called for the mail at the proper post office, received it, delivered it by truck to its steamer, and by its steamer to its destination, which was to points in Central America and the West Indies.
Plaintiff was regularly paid for the carriage of this mail at the rates prescribed by the postal laws and regulations until December 1,1932. Thereafter, defendant paid plaintiff for so-called non-Convention mail only. From that time on it refused to pay for the carriage of so-called Convention mail, that is, mail covered by the provisions of the Postal Convention between the Americas and Spain, signed at Madrid November 10, 1931, and approved by the President February 9, 1932 (41 Stat. 1924^-1956). This suit is to recover for the carriage of such mail. Defendant refused to pay for its carriage because of the provisions of that Convention.
The plaintiff company was organized under the laws of the State of Delaware, but its steamships which carried the mails in question were registered under the flag of the Republic of Honduras. Both the defendant and Honduras were signatories to this Convention. Article 3 of it (41 Stat. 1925) reads as follows:
Free and gratuitous transit. — 1. The gratuity of territorial, fluvial and maritime transit is absolute in the territory of the Postal Union of the Americas and Spain; consequently, the countries which form it obligate themselves to transport across their territories and to convey by the ships of their registry or flag which they utilize for the transportation of their own correspondence, without any charge whatsoever to the contracting countries, all that which the latter may send to any destination. * * $ « A
The same provision was incorporated in the later Convention of 1936, ratified August 12, 1937, and approved by the President August 20,1937 (50 Stat. 1657,1658).
The defendant contends that under the terms of this article Honduras only is liable for the charges for the carriage of this mail. Plaintiff says that it was not á party to that Convention and is not bound by it, but that its rights are determined by the postal laws and regulations and that it *682 is entitled to the compensation fixed by the Postmaster General in those regulations under the authority granted by section 4009 of the Revised Statutes, as amended. To this defendant replies that the above-quoted provision of the Postal Convention was a part of the postal laws and regulations of the United States, and that according to its terms Honduras, and not the United States, was liable for the carriage of the mails in question.
Defendant is right in saying the Postal Convention is a part of the postal laws and regulations. It was entered into under the authority of R. S. 398, which reads: (Sec. 372, Title 5, U. S. C.)
For the purpose of making better postal arrangements with foreign countries, or to counteract their adverse measures affecting our postal intercourse with them, the Postmaster General, by and with the advice and consent of the President, may negotiate and conclude postal treaties or conventions, and may reduce or increase the rates of postage or other charges on mail matter conveyed between the United States and foreign countries; Provided, That the decisions of the Postmaster General construing or interpreting the provisions of any treaty or convention which has been or may be negotiated and concluded shall, if approved by the President, be final and conclusive upon all officers of the United States. (R. S. sec. 398; June 12,1934, ch. 473,48 Stat. 943.)
It has the same force and effect as any other regulation issued by the Postmaster General under authority of law. 33 Op. A. G. 276, 278; Four Packages of Cut Diamonds v. United States, 256 Fed. 305.
Under that Convention Honduras is plainly liable for the carriage of the mails in question. Under it the United States assumed liability for the carriage of mails by ships of its registry, Panama by its ships, and Honduras and the other Central American countries by their ships. Plaintiff carried the mails in question with knowledge of the terms of this Convention, and we think it is bound by it.
But, plaintiff says that it was the defendant that required it to carry the mails, and not Honduras, and from this very fact an implied contract arises on the part of the defendant to pay it compensation therefor. It points to section 4016 *683 of the Revised Statutes, as amended (18 U. S. C. 326), which requires it to take the mail from the United States Post Office when its ships are leaving our ports, and imposes on it a fine of $1,000 for failing or refusing to do so. It also points to the Act of February 6,1929 (ch. 157,45 Stat. 1153), which authorizes the Postmaster General to require any steamship to carry the mail between the United States and any foreign port “at the compensation fixed under authority of law,” and which authorizes the Collector of the port, or other officer, to refuse clearance of a vessel upon its refusal to accept the mail tendered. It says it was obliged under these Acts to carry the mail and, therefore, that an implied promise arose that the defendant would pay for it, whether or not Honduras was also obligated to do so.
It is true that ordinarily when the United States demands service from a person, it impliedly agrees to pay just compensation therefor, but we do not think such an implied contract arose under the facts and circumstances of this case.
Beginning with December 1, 1932, the United States refused to pay for the carriage of Convention mails, claiming that it was not liable therefor under the. terms of article 3 of the Convention between the Americas and Spain. Correspondence then ensued between the parties relative thereto. This culminated in a letter from the Post Office Department to the plaintiff, dated August 7, 1933, reviewing the provisions of the Postal Convention, and stating that—
Under the circumstances, no obligation rests upon this Department for services rendered by your company in the transportation of the mails in question by a steamship of the registry of one of these countries sailing from a United States port, such obligation having been assumed by the country whose flag the steamship flies, through the approval by the government of such country of the Convention containing the free transit provision cited above. Your claim should therefore be properly submitted to the postal administration of the country concerned for consideration.[1]
*684 Plaintiff did not acquiesce in this position, but in view of it, it cannot be said that any mail delivered to plaintiff after this letter was written was delivered to it under an implied promise on defendant’s part to pay for the carriage of it, in case Honduras did not. Instead of an implied promise to pay for it, thére was an express refusal to do so. Plaintiff has been paid for all mail carried up to the date of that letter.
’ Plaintiff was paid therefor in this manner: The United States was indebted to the Honduran Department of Posts for the carriage of parcel post mail. By agreement with that Department, the United States Post Office Department on April 22, 1938, drew a United States Treasury warrant for $14,194.24, in favor of the Director General of Posts of the Republic of Honduras, and that officer endorsed the same to plaintiff in payment of its debt for the carriage of some of the mails for which plaintiff sues. In this way plaintiff was paid for all mails carried from December 1, 1932, to October 6, 1934. Subsequently, on September 1, 1940, the Post Office Department issued another United States Treasury warrant, this one for the sum of $28,574.50, payable to the Minister of Fomento, Agriculture and Labor of Honduras, and that official endorsed and delivered the same to plaintiff in payment for the carriage of the mail from October 6,1934, to April 16,1937.
This is further evidence that the defendant did not impliedly agree to pay for the carriage of these mails.
Unless there was a contract between plaintiff and defendant, either express or implied in fact, under which defendant agreed to pay for the carriage of the mails, there can be no recovery in this court. Since we are of the opinion that defendant neither expressly nor impliedly agreed to do so, plaintiff’s petition must be dismissed.
counterclaim
The defendant has interposed a counterclaim for the sum of $117,304.33, the amount paid plaintiff by the defendant for the carriage of mails from March 12,1919 to January 9, 1942. In its brief it reduces this claim to $56,032.53. The claim is based upon article 5 of a contract entered into between plaintiff’s predecessor, Vaccaro Bros, and Company, *685 and the Republic of Honduras on March 12, 1919. This article reads in part, according to the English translation thereof, as follows:
The concessionaire undertakes to carry and forward free of charge from and to the United States of America, all mail matters which may be delivered to him by the proper post offices, addressed to ports which his steamers shall touch, regardless of the fact whether such steamers are his own or chartered. * * *
From April 1919 to the last of November 1932 defendant paid plaintiff various sums of money for all mail carried by it from ports of the United States to Honduras and other countries in the West Indies and Central America. Subsequent to November 1932 defendant paid other sums for mails carried by plaintiff’s vessels to places other than Honduras. Defendant claims the right to recover all amounts paid both for the mail carried to Honduras and for that carried to other countries.
We are of the opinion that defendant is not entitled to recover any sum on its counterclaim because the contract, of which article 5 is a part, plainly was not entered into for the benefit of the United States. If it was not entered into for the benefit of the United States, then the United States cannot maintain an action on it. German Alliance Insurance Co. v. Home Water Supply Co., 226 U. S. 220; Robins Dry Dock & Repair Co. v. Flint, et al. 275 U. S. 303.
Article 5 is a part of a contract for a concession granted to Vaccaro Bros, and Company by the [Republic of Honduras. Portions of this contract are set forth in the Gazette, the official publication of the Republic of Honduras. This publication quotes articles 1, 5,13,14,15,16,17, 21, 23, 26, 28, and 29. Under article 1 the concessionare agreed to make certain extensions of a railroad it had built in the Republic of Honduras; by article 5 the concessionaire agreed to carry the mails to and from the United States of America free of charge, and in this article it was agreed that certain freight should be exempt from certain duties, and that the concessionaire would be permitted to load and unload its products at any hour of the day or night; by article 13 Honduras agreed to grant to the concessionaire certain lands; by article *686 14 the concessionaire was given the right to construct branch railroad lines; by article 15 it was granted the right to cut and use timber on the national lands, the right to the use of the motive power of rivers, the right to mine and use coal and oil necessary for the operation of the railroad, the free use of national land in connection with the operation of the railway, and its laborers were given-exemption from military service in time of peace, and in certain circumstances in times of war; bjr article 16 the concessionaire was given the right to construct telephone and telegraph lines, with the right in the Government to use these lines for the transaction of public affairs; by article 17 the concessionaire was given the right to import free of duty railroad equipment, etc.; by article 26 the concessionaire agreed to give to Honduras one-half of the net profits from the operation of a wharf which it undertook to construct; and by article 28 the concessionaire agreed to pay to Honduras an exportation fee on bananas exported from Honduras.
The above provisions of the contract have been set forth in order to show that the contract was entered into for the mutual benefit of plaintiff’s predecessor and the Eepublic of Honduras, and that there was no purpose on the part of either of the parties to confer any benefit on the United States. No intention is manifested by this contract to relieve the United States of any liability which it might incur to plaintiff for the carriage of its mails from its ports to any other place.
What the parties intended was that the mail should be carried from and to the United States of America free of charge to the Eepublic of Honduras. We do not think that the parties had in mind the carriage of mails “free from any charge” which the concessionaire had a right to make against the United States.
We are of opinion that the defendant is not entitled to recover on its counterclaim.
Plaintiff’s petition will be dismissed. It is so ordered.
Madden, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.
Mr. Wüliam I. Denning for plaintiff. Messrs. John W. Gross and Earl G. Waleh were on the brief.
Mr. J. Frank Staley, with whom was Mr. Assistant Attorney General Francis M. Shea, for the defendant.
ON" MOTIONS FOR NEW TRIAL
Whitaker, Judge,
delivered the opinion of the court:
Plaintiff in its motion for a new trial says that an implied contract on the part of the defendant necessarily arose to pay it reasonable compensation for the carriage of the mails since the statutes made it obligatory on it to do so, subjecting it to a fine and other penalties for refusing to do so.
In our former opinion we said:
It is true that ordinarily when the United States demands service from a person, it impliedly agrees to pay just compensation therefor, but we do not think such an implied contract arose under the facts and circumstances of this case.
We then quoted defendant’s letter of August 7, 1938, and the subsequent dealings between the parties, and concluded that there was no implied contract to pay for the carriage of the mails, but an express refusal to do so.
Under such facts we think it is clear that the penal statutes to which plaintiff refers have no application. Defendant could not constitutionally have required plaintiff to carry the mails since it expressly refused to pay for their carriage. In view of defendant’s refusal to pay compensation, plaintiff could have refused to render the service and defendant would have been powerless to impose the penalties fixed in the statutes. Instead, plaintiff performed the service knowing the defendant disclaimed liability to pay for it, and it later acquiesced in arrangements made by defendant for Honduras to do so.
There was no suggestion of a threat by defendant to impose the penalties of the statutes. Although protesting against defendant’s refusal to pay, plaintiff nevertheless performed the service voluntarily.
No contract express or implied having arisen to pay for the service, and the statutes having no application to such a case, plaintiff may not recover.
*688 The other points raised in the motions for a new trial have been considered, but we think they are without merit. Plaintiff’s motion for a new trial is overruled. Defendant’s motion is also overruled. It is so ordered.
Madden, Judge; Littleton, Judge, and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.

 This letter was not offered in evidence on the hearing before the commissioner, although it was marked for identification, exhibited to plaintiff’s witness Pratt, and this witness was interrogated about it; but on the argument of the case before the court a motion was made that it be received in evidence. It is relevant, competent and material and will be received.