**UNITED FRUIT COMPANY**
**v.**
**The UNITED STATES.**
**No. 324–52.**

United States Court of Claims.
March 6, 1956.

William I. Denning, Washington, D. C., for plaintiff. Alan F. Wohlstetter and Ernest H. Land, Washington, D. C., were on the briefs.

Thomas F. McGovern, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff sues defendant for compensation for the carriage of mails for the period June 26, 1946 to December 9, 1946.

Plaintiff, a New Jersey corporation, time-chartered six vessels from Empresa Hondurena de Vapores, a Honduran company, which was a wholly-owned subsidiary of plaintiff. The vessels, of course, flew the flag of Honduras and were operated under the laws of that country.

During the period in question the vessels transported for defendant certain so-called convention mails and non-convention mails. Plaintiff has been paid for carrying the non-convention mails, but not for carrying the convention mails. These mails were carried from New Orleans and Cristobal, Canal Zone, to ports in Panama, Costa Rica, Honduras, Nicaragua, El Salvador, and Guatemala. All of these countries, as well as the United States of America, were parties to the Convention of the Postal Union of the Americas and Spain.

Article 3 of this Convention, entered into in 1937, 50 Stat. 1657, 1658, reads as follows:

"1. The gratuity of territorial, fluvial and maritime transit is absolute in the territory of the Postal Union of the Americas and Spain; consequently, the countries which form it obligate themselves to transport across their territories, and to convey by the ships of their registry or flag which they utilize for the transportation of their own correspondence, without any charge whatsoever to the contracting countries, all that which the latter send to any destination.

"2. In cases of reforwarding, the contracting countries are bound to reforward the correspondence by

the ways and means which they utilize for their own dispatches."

Such mails are called convention mails. Plaintiff sues for the carrying of them.

Similar suits have been before us heretofore, but each of them, and this action as well, differ in some respects. In United Fruit Co. v. United States, reported in 103 Ct.Cl. 303, 308 et seq., there was involved the carriage of mails by vessels flying the flag of Panama. Notwithstanding article 3 of the Convention quoted above, Panama denied liability for compensation for the carrying of them. We held that since the United States had required the carriage, and since Panama would not pay, the United States was liable.

On the same day we decided Standard Fruit & Steamship Co. v. United States, also reported in 103 Ct.Cl. 659, 680 et seq. This suit involved the carriage of mails by vessels flying the flag of Honduras. Honduras did not deny liability to pay compensation therefor, and prior to their carriage the United States had disclaimed liability. Notwithstanding the non-acquiescence of plaintiff in this disclaimer, we held that there was no implied promise by the United States to pay for them, and we gave judgment for the defendant. Honduras later paid plaintiff.

In United Fruit Co. v. United States, 81 F.Supp. 502, 112 Ct.Cl. 519, 528 et seq., there was also involved the carriage of mails by vessels flying the flag of Panama. Defendant defended on the ground that the United States had disclaimed liability before the mails were carried. It, however, appeared that plaintiff had vigorously protested this disclaimer of liability, and it did not appear that the United States had persisted in its disclaimer in the face of this protest. Under these circumstances, and because Panama denied liability, we held that a promise to pay must be implied, especially since it was not within the power of the plaintiff to refuse to carry the convention mails, since they were commingled with the non-convention mails, which plaintiff was under the duty to carry.

Now, in the case at bar there was also a disclaimer of liability by the United States, and continued protest by the plaintiff, without any resolution of the dispute at the time the mails here involved were carried. However, on August 30, 1954 the Ministry of Foreign Relations of the Republic of Honduras advised the United States Minister to Honduras, in part, as follows:

"* * * When your Ministry, through the National Merchant Marine Bureau, grants a navigation license and registry, the company or owner of the vessel is required 'To waive any claim for transportation of mail delivered to it by the countries signatory to the Postal Union of the Americas and Spain,' whence it is concluded that the Government of Honduras grants licenses to vessels of the said companies or private persons on condition that they transport the aforesaid mail in exchange for exemption from beacon, wharfage, and tonnage charges, subsidies, etc. * * *"

Later, on October 4, 1954, the president of Empresa Hondurena de Vapores, the owner of the vessels transporting the mails, wrote the Postal Administrator of Puerto Cortes, Republic of Honduras, in part as follows:

"As far as I know, the only provision in effect on the subject is that indicated in Article 114, subparagraph 3, of Legislative Decree No. 45 of 1943, cited in the verbal note mentioned. In some contracts for the transportation of mail executed prior to the year 1943, between the Executive Power and steamship companies, the latter assumed the obligation of making the said transportation without any cost to the Government in exchange for the exemption from the payment of port charges, such as anchorage, clearance, lighthouse, etc.; see the con-

tract with The Pacific Steam Navigation Company and that with the Compània Naviera del Pacifico, 'Grace Line,' both of the year 1937, published in Nos. 10226 and 10262 of the official daily 'La Gaceta' of the said year.

"In regard to vessels of Honduran registry referred to in the preamble of the aforementioned transcription, whether they navigate in national waters or in those of other countries, they are obligated to carry gratis the mail from Honduras and to Honduras, in accordance with subparagraph 5 of Article 114 of the Postal Law."

It would, therefore, appear that the Republic of Honduras, which was liable for the payment for the carriage of the mails under article 3 of the Postal Convention, has paid for their carriage by exempting plaintiff's vessels from beacon, wharfage and tonnage charges, and by subsidies, etc.

Plaintiff, having collected in this way from Honduras for the carriage of the mails, is not entitled to collect again from the United States. It is the Republic of Honduras that is primarily liable under the Postal Convention for the carriage of these mails, and it has paid for it in the way stated above.

The aforementioned correspondence was written after the period in question, but we assume it is a statement of the conditions on which the vessels were licensed originally.

Plaintiff also says the Republic of Honduras is liable to pay for the carriage of these mails only if that country utilized these vessels for the carriage of its own mails on the particular voyages when the United States utilized these vessels for the carriage of its mails. Article 3 of the Postal Convention is not so limited. Nor does Honduras undertake to so restrict its liability, as shown by the communication from its Ministry of Foreign Relations quoted from above.

Neither does the owner of the vessels undertake to so restrict its liability, as shown by the extract from his letter set out above.

Plaintiff says that in Standard Fruit & Steamship Co. v. United States, 103 Ct.Cl. 659, 684, we denied the counterclaim of the United States for money the United States had already paid the plaintiff in that case, based on the provisions of a contract between Honduras and the Standard Fruit and Steamship Company requiring the vessels to carry the mails to and from Honduras without charge, in consideration of certain concessions granted. We pointed out in that case that the contract was not made for the benefit of the United States and, hence, the United States could not maintain an action on it.

Such a holding is, of course, quite different from a holding that the present plaintiff is not entitled to collect twice for the carriage of the mails. The Standard Fruit and Steamship Company did collect twice, but, even so, we could find no basis for a recovery by the United States of the money it had paid. The period involved in the counterclaim was from 1919 to 1942, and, hence, some of these mails were carried prior to the Postal Convention of 1932, 47 Stat. 1924, renewed in 1937, 50 Stat. 1657, and some thereafter. The Government's claim did not disclose how much was carried before and how much afterwards.

Had the United States not paid for the mails carried after the Convention, and the Standard Fruit and Steamship Company had sued for the carriage thereof, we would have denied it recovery, even as we do in the present case. However, on the case presented we could find no basis for recovery by defendant.

Plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN, and LITTLETON, Judges, concur.