Madden, Judge,
delivered the opinion of the court:
The plaintiff, a lawyer with his office in Chicago, was driving to his home in Wheaton, Illinois, on the night of February 25, 1939. He was driving an automobile, wh^ch he bad borrowed irumua client. His route was along á) four-lane highway known as Roosevelt Road, which at one place ran between the City of Maywood, Illinois, and the Edward Hines Memorial Hospital, a veterans’ hospital which, with its grounds, occupied a square mile of land south of and abutting on the highway. For one driving west the last street intersecting the highway before the place of the collision was First Avenue, where there was a traffic light. The plaintiff was stopped there by a red light. He proceeded when the light turned green, and passed Second, Third and Fourth Avenues, Maywood streets, which entered the highway from the north but did not cross it because of the hospital grounds which lay south of the highway. The plaintiff had picked up a speed of some forty miles an hour in the quarter of a mile between the traffic light and Fifth Avenue. On the south side of the highway, opposite the entrance of Fifth Avenue from the north side, was an entrance to the hospital grounds, and a gatekeeper’s house was located there. A sign along the highway somewhere *828 near the Third Avenue entrance said “Slow — Hospital Entrance.” The plaintiff did not use his brake as he passed the sign, but did take his foot off the accelerator. As he approached Fifth Avenue, a Government mail truck which had approached from the north, turned from Fifth Avenue west, that is, to the right, onto the highway. The plaintiff saw the truck and supposed that it would turn into and proceed along the north or outside lane of the two lanes for westbound traffic. Instead it proceeded into the inner lane, at least in part. The plaintiff attempted to turn to the left to pass it but did not succeed; his car collided with the truck about twenty feet west of the west curb line, extended, of Fifth Avenue; it struck the truck on the left side of its rear end; the plaintiff was injured ánd his car damaged in the collision. The mail truck went forward out of' control, made a U-turn to the right, and tipped over. The driver of the truck was not injured, and the truck was only slightly damaged. »
The driver of the mail truck, one George Prack, was collecting mail from boxes. He had picked up mail along Fifth Avenue and was headed for the next box, which was on Sixth Avenue near the highway. He testified that he stopped at a stop sign which other testimony placed about 27 feet north of the highway. Whether he did or not, we are in doubt. For he also testified that he stopped again, or practically stopped, at the north line of the highway just before turning onto it, and that he looked carefully to the west and to the east to see whether any cars were approaching. We doubt whether he looked to the west with much interest, since east-bound traffic, on the south side of the highway, would have been well out of his intended path. We feel sure that he did not look east with any care at all because the plaintiff’s car was at the time proceeding toward him and about 100 feet away, and he could hardly have failed to see it if he had looked at all. He testified that he did not see it, and did not know what had struck him until he crawled out of his overturned truck. We have no doubt of the Government driver’s negligence, and of its being a cause of \the collision and damage.
*829 , A more difficult question, is whether the plaintiff was guilty of contributory negligence. We have concluded, somewhat doubtfully, that he was .not. We think that he was not under a duty to anticipate the kind of driving which the mail driver indulged in; and to reduce his speed along this unintersected stretch of road so that he could stop or turn quickly enough to avoid a collision such as occurred. We think that normal, and therefore non-negligent, driving, in the circumstances, did not require that he anticipate that the mail driver had not seen what was obvious, and would not act accordingly.
The Government’s witness Cieslak, the guard at the gate of the hospital, testified that the plaintiff was driving at fifty miles an hour. The Government urges that he was an impartial witness. We see no reason why he should not have been, yet we do not think he was either truthful or accurate in his testimony. He twice stated positively that the plaintiff’s car did not have its lights on, and then twice stated that he didn’t remember whether it had lights on or not. He said that it was just starting to get dark, though it was after seven on a dark night in February.
We now consider the items of damage which should be inclüdécTiñ the pluilrEiff’s recovery! As to the bills-Jor medical and hospital treatment, there is no controversy as to their amount. “We do not allow the $50 which the plaintiff claims for medical expert witnesses at the hearing of this case. '£he Government urges that the plaintiff may not recover for, the costTof repairing the borrowed automobile- which he was driving, $196.69. We disagree. We disregard the assignment which the plaintiff toot from the owner when he paid the owner the costs of the repairs. But we think that .the plaintiff, as a bailee in possession of the car, has the right, to recover against a third party wrongdoer, here the Government, for damage done to the carlrThis possession. If we are right in our conclusion thatthe plaintiffwrershot negligent, the owner could not have required the plaintiff to pay for the repairs. ^TButTihe liability or nonliability of the bailee tq_the owner is .iml 'decisÍTe. When the British Government lost mail as a result of the negligent operation of a ship which collided with the ship which was carrying the mails, it re *830 covered against the wrongdoing ship, though it was under no accountability to the senders of the lost mail. The Winkfield [1902], P. 42, 71 L. J. P. 21. Our Government claims, and is accorded, the same right. See United Fruit Co. v. United States, 33 F. (2d) 664. We see no reason why the plaintiff should not have the same right.
The Government urges that the plaintiff, though absent from his law office completely for sevten weeks, and to a considerable extent for four months more, has not proved any loss of earnings. It is true that, as to one client from which he received a regular salary, the plaintiff persuaded the client to pay him the salary on the ground that the work had been allowed'to pile up so that he did it all after his return. But he testified that a comparison of his earnings for the previous and subsequent years with the year in which he was injured showed that he had lost $3,000 in fees. It is never possible to determine with accuracy what a professional man who works for casual fees has lost by being disabled for a period. We award the plaintiff $2,000 on this account.
The question of how much the plaintiff should receive for his pain and suffering, and for permanent injuries, is a jury question. The pain and suffering were great, for a time, and there are occasional recurrences, not very severe. There is a considerable disability of the injured leg. For an active young man to go through life with a weakness of this kind is a substantial handicap. For pain, suffering, and disability we award the plaintiff $3,500.
The plaintiff may recover $6,511.49. It is so ordered.
Whitaker, Judge; and Littleton, Judge, concur.