**TWENTIER et al. v. UNITED STATES.**

No. 50340.

United States Court of Claims.

Jan. 13, 1953.

John A. Kendrick, Washington, D. C., for plaintiff. Burton, Heffelfinger, Mc-Carthy & Kendrick, Washington, D. C., were on the brief.

Gilbert E. Andrews, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LIT-TLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

This is an action brought by a partnership for damages of $41,075.54 caused by loss of and damage to shipments of fourth class, unprotected mail. The theory of plaintiff's case is that the damage was caused by reason of the breach by the defendant of an implied contract of bailment. Defendant has filed a motion to dismiss on the ground that the carriage and delivery of mail being a public function, the United States is not responsible to the owner of mail lost in transportation.

From the allegations of the petition it appears that in June of 1945, Max Twentier, acting for plaintiff partnership, contracted with the Special Service Officer of the Third Armored Division of the United States Army,[1] to ship to that officer quantities of pins and rings bearing the division's distinctive insignia. The agreement was that the Special Service Officer would take orders for these pins and rings, collect for them in advance, and forward the money and the orders to plaintiff, who, on receipt of the orders, was to fill them.

The shipments involved in this case were made on October 2, 8, and 20, 1945, by delivering to the United States Post Office at Bisbee, Arizona, large cardboard containers properly wrapped and labeled, and addressed to the Special Service Officer at his Army Post Office address. The packages were shipped using fourth class, unprotected mail. The contents of the three shipments were rings, having a total value of $51,784.50.

The shipments were transmitted to the Army Postal System in New York City, for shipment overseas, but they never reached the addressee. A part of the three shipments was later returned to plaintiff in a damaged condition, and it was found that rings of the value of $33,864.50 were missing from the containers. Having been paid in advance for the shipment, plaintiff alleges that it was obligated to send another shipment of rings to those who had ordered them, and in so doing it incurred in addition to the $33,864.50, a loss of $6,695.14 due to an increased cost of materials, and $515.90 due to the cost of handling and mailing. Plaintiff therefore claims a total loss of $41,075.54.

Provision for the Army Postal System is made by the Act of August 21, 1941, 55 Stat. 656, as amended, 39 U.S.C.A. § 138, which reads in part as follows:

"Enlisted men of the Army of the United States may, upon selection by the Secretary of War, be designated by the Post Office Department as 'Army mail clerks' and 'assistant Army mail clerks', who shall be authorized to receive and open all pouches and sacks of mail addressed to Army posts, military reservations, and defense bases, owned or leased, to make proper delivery of such mail * * *. Each Army mail clerk and assistant Army mail clerk shall take the oath of office prescribed for employees of the Postal Service and shall give bond to the

---

1. Defendant contends that the Special Service Officer had no authority to enter into such a contract with the plaintiff on behalf of the United States. This contention is not material to the issues here. Plaintiff is suing for the breach of an implied contract of bailment with the United States Post Office Department.

United States in such sum as the Postmaster General may deem sufficient for the faithful performance of his duties as such mail clerk, and shall be amenable in all respects to Army discipline, except that, as to their duties as such clerks, the commanding officer at the base, post, or reservation at which they are stationed shall require them to be governed by the Postal Laws and Regulations of the United States. * * *"

Plaintiff apparently considers the Army Postal System to be a part of the Army, and contends that there was created an implied contract of bailment between it and the Army which, when the goods were not delivered to the addressee or returned to plaintiff in an undamaged condition, places upon defendant the burden of establishing that reasonable care was used by the Army in the handling of the bailed articles.[2] Plaintiff further contends that as the Army has been subjected to actions in contract in the past, it follows that the Army Postal Service is likewise subject to contractual liability.

■ We interpret the above quoted statute to mean that the Army Postal System is an extension of the United States Post Office Department. Therefore, if any contract of bailment arises, by implication or otherwise, it must be between plaintiff and the United States Post Office Department, not plaintiff and the Army.

There is much language in the cases that the status of the Government in carrying and delivering the mails is that of a bailee to the owner or sender. United States v. National Surety Corp., 8 Cir., 103 F.2d 450, affirmed 309 U.S. 165, 60 S.Ct. 458, 84 L. Ed. 677; United States v. United Fruit Co., D.C., 292 F. 308; United States Fidelity & Guaranty Co. v. United States, 9 Cir., 246 F. 433; United States v. Atlantic Coast Line R. Co., 4 Cir., 215 F. 56; United States v. Hamburg-Amerikan, etc., Gesellschaft, 2 Cir., 212 F. 40, L.R.A.

1917C, 1103; United States v. American Surety Company, 4 Cir., 163 F. 228. It should be noted, however, that in the cases cited, the language used is in response to contentions of defendants sued by the Government that the Government, not being liable to the owners or senders of lost mail, had no right to recover. The question of the liability of the Government to the sender of lost mail presented here, was not in issue in any of these cases.

■ Whatever the status of the Government may be, it is clear that it has a sufficient interest to maintain a suit for loss of or injury to the mails (cases cited, supra).

It has been held that in the event of recovery by the Government, the money is held in trust, and it is the duty of the Government to turn it over to the owner of the mail. United Fruit Co. v. United States, 5 Cir., 33 F.2d 664. This has no bearing on the present case, however, as there has been no recovery by the Government.

Assuming that an implied contract of bailment exists between plaintiff and defendant because of the tender of shipments to the United States Post Office Department, we come to the question as to whether the United States is liable to claimant for the partial loss of or damage to fourth class, unprotected mail.

■ The United States, in the carriage and delivery of mail for the public benefit, is beyond question engaged in the discharge of a governmental function. United States v. Rogde, D.C., 214 F. 283, 290. It has been broadly stated that the Government is not responsible to the owner of mail lost in transportation. United States v. Atlantic Coast Line R. Co., 4 Cir., 215 F. 56, 60, L.R.A.1915A, 374.

■ That this unqualified statement is too broad is apparent. The United States is liable to the owners of lost or damaged mail only to the extent to which it has consented to be liable, and the extent of its liability is defined by the Postal Laws and

2. Plaintiff's contention, if allowed, will have the effect of admitting liability, as the burden of showing that reasonable care was used in the handling of a piece of ordinary mail over seven years ago, where the injury to the mail apparently took place in Germany, is almost unsurmountable.

Regulations. Public policy requires that the mails shall be carried subject to these regulations, Great Northern Rwy. Co. v. United States, 8 Cir., 236 F. 433, and the liability of the Government in case of loss or damage is fixed by these regulations. See United Fruit Co. v. United States, supra. Cf. Howard v. United States, 101 Ct. Cl. 823, 830.

Under the Postal Laws and Regulations, no liability exists on the part of defendant for the loss of or damage to mail of the type here involved. In order to secure protection against loss or damage, it is necessary to use registered, insured, or c. o. d. mail. At the time the shipments were made, the use of registered, insured, or c. o. d. services for mail addressed to A.P.O. addresses overseas was forbidden. Order of the Postmaster General #19687, dated January 7, 1943, Postal Bulletin #18539, January 8, 1943.

Plaintiff further contends that because of that order it was unable to avail itself of the protection of the Postal Laws and Regulations by selecting one of those methods of sending the shipments, and therefore, that it is not precluded by the Postal Laws and Regulations from maintaining this suit, as its use of mail not protected thereunder was not a matter of choice but of necessity imposed by the order. In our opinion this contention is not sufficient to support a cause of action under the facts of this case. The fact that under the Postal Laws and Regulations the plaintiff, in this instance, could use only fourth class, unprotected mail indicates that defendant, in the performance of a sovereign function, was unwilling to provide any remedy of indemnification for losses of the kind which plaintiff has suffered, due to the risks inherent in wartime transportation of mail overseas. To allow this suit would be to circumvent the entire statutory scheme, as provided by Congress, and to make possible a recovery where none was ever contemplated.

It is our conclusion that under the facts and circumstances of this case, defendant is not liable to plaintiff for the loss of or damage to the fourth class, unprotected mail for which claim is here made. Plain-

tiff has failed to state a claim upon which relief can be granted and, accordingly, defendant's motion to dismiss is hereby granted, and the petition is dismissed.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, Judges, concur.