**RIDGWAY HATCHERIES, INC.,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. C 66–8.

United States District Court
N. D. Ohio, W. D.

Jan. 22, 1968.

Fuhrman, Gertner, Britz & Barkan, Toledo, Ohio, for plaintiff.

**442**

Rolf H. Scheidel, Asst. U. S. Atty., Toledo, Ohio, Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, for defendant.

OPINION

DON J. YOUNG, District Judge.

This is an action involving the construction of regulations dealing with United States Postal Insurance. Plaintiff's complaint alleges that it delivered to the United States Post Office at Marion, Ohio, 3,142 goslings for delivery to Miller, South Dakota, and that pursuant to 39 U.S.C. § 5006, and the regulations adopted thereunder, the plaintiff insured said goslings at $.90 per gosling. The complaint further states that due to delays in transit, the shipment arrived late resulting in chilling and that 298 chicks were dead on arrival and 1,502 died shortly thereafter.

Both the plaintiff and the United States have filed motions for summary judgment and a stipulation of facts has been agreed upon and submitted to the Court for consideration in connection with said motions. The relevant parts of the stipulation are as follows: The goslings were hatched at about 4:00 A.M. on April 12, 1965 and were delivered to the Post Office at Marion at about 5:00 P.M. on the same day. The insured packages were dispatched about 9:50 P.M., April 12th and arrived in Chicago at 2:30 A.M. April 13, 1965. Emergency flood conditions existed at that time in the northern part of Iowa and southern Minnesota. The insured packages did not leave on the train from Chicago to Minneapolis-St. Paul at 9:00 A.M. April 13, 1965, as they would have under normal circumstances. The means used to dispatch the packages from Chicago on April 13, 1965 is not known but they did arrive at Miller, South Dakota on April 15, 1965 in two shipments at 7:45 A.M. and 9:40 A.M. The parties also stipulated that under the schedules known to the plaintiff and the Post Office Department the insured packages would normally have been delivered within 60 hours of the hatching of the goslings.

The Postal Service is not generally liable for loss or negligent transmission of mail. However, federal law states that the Postmaster General shall provide for indemnification by insurance or otherwise for articles lost or injured in the mail. 39 U.S.C. § 5006. The shipper can thus shift some of his risks by purchasing either commercial insurance or government insurance pursuant to and subject to the regulations promulgated by the Postmaster General. Since plaintiff elected to insure the packages through the Government, it is necessary to construe the postal regulations regarding insurance.

39 C.F.R. § 164.2 (1967) provides in part:

"Postal insurance within the amount covered by the fee is payable for:

"(d) Death of baby poultry due to physical damage to the package or delay for which the Postal Service is responsible. In the absence of definite evidence showing responsibility for death of baby poultry, the Postal Service will be presumed to be at fault if 10 percent or more of the chicks are dead on delivery, if delivered within the 60 hour limit, and insurance will be paid for all dead chicks; otherwise the Postal Service will not be presumed to be at fault."

Section 164.3 of the Code of Federal Regulations provides:

"(b) Payment will not be made when:

"(12) Death of baby poultry was due to shipment to points where delivery could not be made within 60 hours from the time of hatch, or the extremes of temperature in the ordinary course of handling."

If delivery is made within 60 hours of hatch and more than 10 percent of the chicks are dead on delivery, the Postal Service is presumed to be at "fault," but if the death was due to shipment where delivery could not have been made within 60 hours the United States cannot be liable under any circumstance. The presumption is inapplicable to this case

because delivery was made after the 60 hour limit and less than 10 percent of the goslings were dead on delivery.

Plaintiff argues that delivery could have been made within 60 hours of hatch but was not, and that under these facts the Postal Service should be liable regardless of the number of chicks which were dead on delivery, or at least be presumed to be at fault until the Government proves otherwise.

 In support of its argument plaintiff cites the rule of construction that language in a contract will be interpreted most strongly against the party using it. The maxim *Omnia praesumuntur contra proferentem,* is founded upon the presumption that the drafter will protect his own interests but might be less careful with the rights of the other party. This rule is most often applied in insurance cases or other cases involving contracts of adhesion.[1] This Court does not think that the rule applies to government postal insurance. The postal insurance regulations are promulgated pursuant to statutory authority, and therefore have the force and effect of law. cf. Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 64 L.Ed. 297 (1920); G. L. Christian & Associates v. United States, 312 F.2d 418, 424, 160 Ct.Cl. 1, cert. denied 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963); Felder v. Federal Crop Ins. Corp., 146 F.2d 638, 640 (4th Cir. 1944). Plaintiff had notice of the regulations and signed the insurance contract subject thereto. The reason for the rule does not exist in cases involving standard policies the terms of which are fixed by law.[2]

In Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), the plaintiff relied on the representations of an agent of the United States to the effect that his entire crop was insurable when in fact the Wheat Crop Insurance Regulations provided for only a small portion of his crop. The Supreme Court of Idaho held that since the knowledge of the agent of a private insurance company binds the company, the same rule applied to government crop insurance. The United States Supreme Court reversed stating:

"The case no doubt presents phases of hardship. We take for granted that, on the basis of what they were told by the Corporation's local agent, the respondents reasonably believed that their entire crop was covered by petitioner's insurance. And so we assume that recovery could be had against a private insurance company. But the Corporation is not a private insurance company. It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures." Id. at 383, 68 S.Ct. at 2.

The Court accordingly held that the Wheat Crop Insurance Regulations were binding on all who sought to come under the Federal Crop Insurance Act, regardless of actual knowledge of the regulations or the hardship resulting from their ignorance.

 The principle of the *Merrill* case is also applicable to federal postal insurance. The United States is liable for lost or damaged mail only to the extent it consents to be liable. Twentier v. United States, 109 F.Supp. 406, 124 Ct.Cl. 244 (1953). The regulations are published pursuant to the Federal Register Act and plaintiffs are deemed to have notice thereof.[3] It would therefore be inappropriate to apply the rule *contra proferentem* in this case.

 Plaintiff would have the Court construe the statute to mean that defendant is "responsible" for the loss of baby poultry if the delivery could have been,

1. 4 Williston, Contracts § 621 (3d ed. 1961).

2. Id. at 774.

3. 44 U.S.C. § 307 (Supp.1967).

but was not, made within 60 hours of hatching regardless of the number of chicks dead on arrival, and that if fault is necessary for responsibility, the presumption is that such fault exists unless shown otherwise by plaintiff. This Court does not agree with plaintff's construction. First, it is obvious from the reading of section 164.2(d) quoted above that fault is necessary for Government responsibility for the death of baby poultry shipped through the mails. Throughout this section the words "fault" and "responsibility" are used interchangeably, and subsection (e) of the same section relating to perishable matter speaks in terms of fault. Thus the risk of loss for the death of baby poultry and perishable matter does not shift through the use of government postal insurance unless the Postal Service was at fault.

Secondly, the burden of showing such fault is on the insured. The regulation states that in the absence of definite evidence showing responsibility for death, the Postal Service will be presumed to be at fault if 10 percent or more of the chicks are dead on delivery and are delivered within the 60 hour limit. It further provides that "otherwise the Postal Service will not be presumed to be at fault." Furthermore, it would be unreasonable to presume fault regardless of the distance to be travelled so long as delivery could be made within 60 hours of the hatching of the chicks, and in spite of the fact that a fixed fee for coverage is charged.

Plaintiff has not shown fault in this case. Nowhere in the stipulation of facts is there anything that would indicate fault on the part of the Postal Service. Furthermore, no facts have been pleaded which could be the basis of fault. It is alleged that the death was due to delays in shipment but not that such delays were the result of any fault on the part of the Postal Service.

For these reasons, plaintiff's motion for a summary judgment will be overruled and the countermotion of the defendant will be granted.