**MARINE INSURANCE CO., Ltd.**

v.

**The UNITED STATES.**

No. 144–68.

United States Court of Claims.

May 16, 1969.

J. Edwin Carey, New York City, attorney of record, for plaintiff. Hill, Rivkins, Warburton, McGowan & Carey, New York City, of counsel.

George M. Beasley, III, Washington D.C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

DAVIS, Judge.

This is plaintiff's second suit arising out of the same occurrence. In the earlier case (Marine Ins. Co. v. United States, 378 F.2d 812 (C.A. 2), cert. denied, 389 U.S. 953, 88 S.Ct. 335, 19 L. Ed.2d 361 (1967)), the Second Circuit set forth the facts as follows (378 F.2d at 813):

> The Marine Insurance Company, Ltd. (Marine Insurance), a British insurer, insured a small package which contained six emeralds valued at $152,190 for the period of its transit by international air mail from Geneva,

Switzerland to its intended receiver, an importer in New York. The package was mailed at Geneva and routinely arrived at the "Mail Division" of the United States Customs Building in New York City, a normal stop for international air mail packages. At this place mail packages are inspected and import duties on the contents are assessed. Because the Mail Division had recently been the scene of the theft of a number of small valuable packages, including some sent by the Geneva shipper who sent this package of emeralds, postal and customs investigators determined to use this package to trap the thief or thieves. To accomplish this they removed the package briefly from its normal progression through the Mail Division, treated it with a fluorescent powder, and then placed it in a registered mail bag with other packages, in order for it to pursue its normal course of routine processing through the "Mail Division" so as to obtain customs clearance prior to its postal delivery to the addressee. The package was then successfully kept under surveillance until it reached the work area of a customs' employee named Madell Collins where the investigators lost sight of it. Collins was later arrested and was prosecuted and convicted under 18 U.S.C. § 1708 for unlawfully having in his possession stolen mail matter, the emeralds. Although the emeralds were never recovered, Collins was convicted on circumstantial evidence that proved he had possessed them in that the wrappings of the package were found in his possession and his body bore traces of the fluorescent powder. His conviction was affirmed by us, United States v. Collins, 349 F.2d 863 (2 Cir. 1965).

Marine Insurance paid its insured, and as subrogee of the claim sued the United States, in the Southern District of New York, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680 (1964). On the Government's motion for summary judgment, the District Court and the Court of Appeals both held that no claim was stated under that Act which specifically excepts (§ 2680(b)) "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matters."

Plaintiff then brought this action under 28 U.S.C. § 1491 (1964), alleging, as its first cause of action, that the defendant "breached its promise to deliver said package and its contents upon due demand therefor", and, for its second claim, a taking for public use without just compensation. The Government has again moved for summary judgment, invoking the pertinent parts of the record in the tort litigation.[1]

We are constrained to grant the motion and dismiss the petition because the Second Circuit's ruling has collaterally estopped plaintiff as to a crucial fact which necessarily bars any possible recovery here. That central fact is that the lost package was still "postal matter" and still "mail" while it was in the hands of the Customs Bureau. The Court of Appeals held that the item did not lose its character as "postal matter" during its stay in the Mail Division of the Customs Bureau or because the Bureau "undertook to use the package for its own purposes in order to apprehend thieves" (378 F.2d at 814). The heart of the decision was that postal matter entering the country from abroad does not cease temporarily to be postal matter when in the temporary custody of customs authorities.

The reason this square holding destroys plaintiff's first cause of action is that we have ruled that the Government is not liable—assuming that an implied contract of bailment exists between the Government and a sender by virtue of a mailing—for loss of or damage to

---

1. The defendant has also asked us, in the alternative, to dismiss the complaint on its face for failure to state a proper claim, but it is unnecessary to consider that branch of the motion.

mail, except as may be provided in the postal laws and regulations.[2] Twentier v. United States, 109 F.Supp. 406, 124 Ct.Cl. 244 (1953). In that case a firm sought damages for the loss of jewelry from packages mailed at the fourth class, unprotected rate to an Army Post Office overseas; at the time, the use of registered, insured, or c.o.d. services for mail to such A.P.O. addresses was forbidden, and the claimant was thus unable to protect itself through those devices. The court said (109 F.Supp. at 408–409, 124 Ct.Cl. at 249): "The United States is liable to the owners of lost or damaged mail only to the extent to which it has consented to be liable, and the extent of its liability is defined by the Postal Laws and Regulations. Public policy requires that the mails shall be carried subject to these regulations, [citation], and the liability of the Government in case of loss or damage is fixed by these regulations." See, also, Nickola v. United States Gov't Post Office Dep't, 137 F.Supp. 943 (E.D.Mich.1956), aff'd on opinion below, 229 F.2d 737 (C. A. 6, 1955) cert. denied, 351 U.S. 908, 76 S.Ct. 698, 100 L.Ed. 1443 (1956); cf. Treifus & Co. v. Post Office, [1957] 2 Q.B. 352 (C.A.).

■ It is as true here as in Twentier that the postal laws and regulations grant no relief to the claimant. There is plainly no right, as plaintiff concedes, under the domestic rules since the package was not governmentally insured or otherwise protected. The parcel post agreement between Switzerland and the United States likewise provides: "Neither the sender nor the addressee is entitled to indemnity in case of loss, ri-

fling or damage of an ordinary parcel, i.e., of an uninsured parcel."[3] And even where the parcel is publicly insured, the United States is liable only to Switzerland and then only after that country, as the office of origin which has "[t]he obligation of paying the indemnity", makes good on the indemnity in accordance with the insurance fee collected (art. 15 § 13, 47 Stat. 2008; see, also arts. 14, 15 §§ 10, 14, 47 Stat. 2004, 2007–2008).[4]

■ By the same token, the second cause of action, for a taking, also founders on the Court of Appeals' determination that the package remained in the mails at all times. The reasons of public policy which forbid recovery on a theory of implied contract—and which are also reflected in the express exception to the coverage of the Tort Claims Act, supra, 28 U.S.C. § 2680(b)—dictate that a plaintiff cannot obtain recovery by reformulating his claim for lost mail as one for an eminent domain taking. "The specific provisions of the statutes [and regulations] condition and limit the extent to which the Government has consented to suit in regard to postal matters." Nickola v. United States Gov't Post Office Dep't, supra, 137 F. Supp. at 944. To allow a suit for a taking "would be to circumvent the entire statutory scheme, as provided by Congress, and to make possible a recovery where none was ever contemplated". Twentier v. United States, supra, 109 F.Supp. at 409, 124 Ct.Cl. at 250.

Because we are bound, under the doctrine of collateral estoppel, by the Second Circuit's holding that this was mail, we do not reach or consider the problem

2. The Second Circuit's holding that this was mail, though made under the Tort Claims Act, invokes the same considerations as would a similar finding under 28 U.S.C. § 1491 (1964), and is therefore binding on us.

3. Parcel Post Agreement with Switzerland, April 1, 1932, art. 15 § 1, 47 Stat. 2004. This agreement is considered part of the postal laws and regulations, and has the same force and effect as other regulations

issued by the Postmaster General under authority of law. See 39 U.S.C. § 505 (1964); Standard Fruit & S. S. Co. v. United States, 103 Ct.Cl. 659, 682 (1945); 39 C.F.R. § 102.2 (Jan. 1, 1962) (currently 39 C.F.R. § 212.2 (Jan. 1, 1968)).

4. Under the Agreement, as in effect at the time, the maximum amount of governmental insurance would have been about $330.

of whether, if that barrier did not exist, plaintiff could state a claim under an implied contract or for a taking. In Alliance Assurance Company v. United States, 252 F.2d 529 (C.A. 2, 1958), involving cargo which did not arrive in this country through the mails, the goods disappeared from the custody of the Customs Bureau and "the manner in which they have vanished remains a mystery". The Court of Appeals held that (a) there was an implied-in-fact contract of bailment redressable under the Tucker Act, (b) the Government impliedly promised to use due care, and (c) the Government failed to discharge its burden of showing that it was not negligent. In its *Marine Insurance Company* case, the Second Circuit distinguished *Alliance Assurance* on the ground that the latter did not concern mail or postal matter. 378 F.2d at 814. This seems clearly correct, and accordingly we need not consider whether we would follow *Alliance Assurance* in an appropriate case and hold that there is an implied contract or a taking. That question remains open in this court for non-mail items dealt with in the Customs Bureau in the way plaintiff's insured's package of emeralds was handled.

The Second Circuit's holding, in the prior action, that this was mail matter is enough by itself to dispose of the present case, but some of the judges (though not all) would go further and rule that plaintiff is also estopped by the last portion of the Court of Appeals' opinion (378 F.2d at 814–815). Those judges read that part of the opinion as an alternative holding that the Government exercised due care in the circumstances, and that the package of jewels was not "exposed to any special risk". On that view, the plaintiff would be barred in this action from claiming or showing that the defendant was negligent and therefore, even if the parcel were outside the mails, no breach of obligation could be proved. Similarly, these judges believe that a prerequisite to a determination of a taking in this situation—if any taking could be found

at all—would be a finding of special risk or negligence.

The defendant's motion for summary judgment is granted and the petition is dismissed.