The above-numbered cases between the same plaintiff and defendant were consolidated by order of the trial judge and are now before this court on cross-motions for summary judgment. There is no issue of material fact. We hold in defendant’s favor and dismiss all petitions.
Plaintiff, John C. Shull, a United States citizen residing in the Philippines, brings these six pro se actions against the United States seeking a total of $21,923.27. The parties have apparently agreed to consolidation and disposition by summary judgment in light of the common issues involved and plaintiffs residence in the Philippines. For simplicity’s sake, we have dealt with each case as a separate matter in *751 Sections A through F of this order. Each section contains the facts as we find them and the disposition of the petition. Although both plaintiff and defendant offer several theories to support their respective summary judgment motions, we deem it necessary to discuss only the following ones.
A. No. 16-78
Costs of Shipping Professional Books
On June 26, 1972, plaintiff Shull was separated from active duty with the United States Army in Saigon, Republic of Vietnam. For the two months prior to separation, plaintiff was an Assistant Mortuary Officer. Before that, plaintiff was a Plans, Policy and Research Officer for the Joint United States Public Affairs Office (JUSPAO). JUSPAO apparently handled routine administrative and liaison matters for military personnel. At the time his active duty ended, plaintiff requested and received authorization to ship 2,000 pounds of goods in excess of his baggage allowance of 600 pounds.
Almost a year after his separation from the Army, plaintiff requested authorization to ship an additional 8,000 pounds of "professional” books at Army expense. The Army apparently denied this request in May 1973 and at least once again in April 1975 when plaintiff resubmitted his request. In the interim, plaintiff conducted extensive correspondence with the Army and members of Congress to gain approval of his claim. Shortly after the April 1975 denial, plaintiff shipped the materials at his own expense.
Plaintiff filed a claim with the Army Finance Center in June 1975 seeking reimbursement of the shipping costs, $2,054.40. The United States General Accounting Office (GAO) denied plaintiffs claim in July 1976. That decision was sustained by the Comptroller General in December 1976. Upon plaintiffs urgings, the GAO reconsidered the claim in 1977 but reached the same result. On January 11, 1978, plaintiff filed the petition in No. 16-78 seeking $4,408.18 for shipping costs, related personal expenses, and the costs of prosecuting his claim.
*752 Together, 37 U.S.C. § 406 (1970)[1] and Paragraph M8000-6, volume 1 of the Joint Travel Regulations (JTR) (June 1, 1972), entitle service personnel to transportation of household goods upon discharge or separation from service. Additionally, 1 JTR Paragraph M8004 (April 1,1976) allows such personnel to ship at Government expense certain professional books, papers, and equipment necessary to perform official duties.
The relevant departmental regulation, Army Regulation (AR) 55-71 (May 1, 1972), provides in Paragraph 5-2a that military personnel must certify that such a shipment contains only items necessary in the performance of official duties. That regulation further provides that at the time a member makes application for shipment, a listing of claimed items be supplied and that the transportation officer must satisfy himself that only items qualifying as professional items are included in the weight cited in the itemization, since this weight must later be certified by the transportation officer. In making this verification, the transportation officer is required to give full consideration to the member’s duty assignment, grade, and length of service.
Plaintiff apparently sought to comply with this regulation in March 1975. Attached to plaintiffs petition is a certification dated March 2,1975, in which plaintiff alleges all listed materials were necessary to his official duties. Neither this certification and listing nor the earlier correspondence evidently persuaded the transportation officer that the items were qualifying professional materials, for the shipment was never approved. In the main, plaintiff argues that the 1975 decision was error because no inspection was conducted and that these materials qualified under a "local policy” that had been applied to other servicemen. We need not decide whether the Army could deny this claim based solely on a listing of the alleged professional materials, a point on which the regulation is unclear. Documents in this record suggest an inspection *753 was in fact made and resulted in the denial of the claim. There is, of course, a general presumption that an agency has acted in good faith and in a manner consistent with the law. See, e.g., Gross v. United States, 205 Ct. Cl. 605, 613, 505 F. 2d 1271, 1275-1276 (1974); Boyle v. United States, 207 Ct. Cl. 27, 34-35, 515 F. 2d 1397, 1401 (1975); Horne v. United States, 190 Ct. Cl. 145, 150, 419 F.2d 416, 419 (1969). While this presumption may be rebutted, plaintiff needs far more than his unsupported allegations which at least in part conflict with the documentary record. Similarly, an agency’s interpretation or application of its own regulation is entitled to considerable deference. E.g., Udall v. Tallman, 380 U. S. 1, 16-17 (1965); Baldwin v. United States, 175 Ct. Cl. 264, 269 (1966), cert. denied, 385 U. S. 1014 (1967), and cases cited thereat. We find no reason on this record to reject the agency’s determination that these materials were not necessary in the performance of plaintiffs duties with JUSPAO or as a Mortuary Officer. Plaintiff has simply failed to convince us the Army was wrong.[2] Accordingly, defendant’s motion for summary judgment as to No. 16-78 should be granted.
B. No. 356-78
Damage Claim for Household Goods Shipped from Vietnam to South Carolina
Also during April 1975, plaintiff shipped an authorized 1,500 pounds of personal, unaccompanied baggage. This authorized shipment was made and received under emergency evacuation proceedings and arrived in Oakland, California, in May 1975. At that time, plaintiff was on his way to Iran, so the goods were delivered to plaintiffs brother in late June 1975 at Newberry, South Carolina. As there was no inventory to establish the contents or condi *754 tion of the shipment, plaintiffs brother took no exception to the delivery and received the goods in "as is” condition.
On November 21, 1976, plaintiff filed a claim for $4,925 with the Army Claims Service. Plaintiff contemporaneously executed a Subrogation and Insurance Statement. On both the damage claim and subrogation agreement, plaintiff indicated he did not have private insurance applicable to the loss.
In April 1977 the Army Claims Service contacted the United Services Automobile Association (USAA), plaintiffs private insurer, and requested information relative to plaintiffs coverage. After plaintiffs approval was obtained, USAA informed the Army Claims Service in July 1978 that plaintiffs policy did cover the shipment of household goods from Vietnam to South Carolina but that plaintiff had made no claim under this coverage. Although the Army had not then denied his claim, the plaintiff filed the petition in No. 356-78 on August 1, 1978, seeking $6,703.17 for the damages incurred in transit. In the interim since the petition’s filing, plaintiffs administrative claim was denied for a lack of substantiation and because applicable regulations (requiring plaintiff to disclose and pursue private insurance remedies) had not been complied with.
The Military Personnel and Civilian Employees’ Claims Act of 1964 (1964 Claims Act), 31 U.S.C. §§240-243, authorizes the settlement of damage claims arising incident to the claimant’s Government service. Under 31 U.S.C. § 241(a)(1),
* * * The Secretary of a military department * * * may [under prescribed regulations] settle and pay a claim * * * against the United States for not more than $15,000 made by a member of the uniformed services * * * for damage to, or loss of, personal property incident to his service. If the claim is substantiated and the possession of that property is determined to be reasonable, useful, or proper under the circumstances, the claim may be paid or the property replaced in kind. * * *
As used in 31 U.S.C. §§240-243, to settle a claim is to "consider, ascertain, adjust, determine, and dispose of any claim, whether by full or partial allowance or disallowance.” 31 U.S.C. §240(3). Moreover, "[notwithstanding any other provision of law, the settle *755 ment of a claim under [31 U.S.C. §§ 240-243] is final and conclusive.” 31 U.S.C. § 242.
Defendant, besides arguing the merits of plaintiffs claim, urges that claims founded on 31 U.S.C. §§240-243 are beyond this court’s jurisdiction. Defendant’s theory is that payment of a claim under 31 U.S.C. § 241(a) is discretionary and that, therefore, the statute and supporting regulations cannot be fairly read to mandate the payment of money damages. See 28 U.S.C. §1491 (1976); United States v. Testan, 424 U.S. 392, 400 (1976); Adair v. United States, 227 Ct. Cl. 345, 349, 648 F.2d 1318, 1322-23 (1981); Bergen v. United States, 213 Ct. Cl. 609, 612 n.3, 562 F. 2d 1197, 1198 n.3, cert0 denied, 434 U.S. 939 (1977). Alternatively, defendant argues that even if these provisions mandate the payment of money damages, 31 U.S.C. § 242, by making any settlement under the 1964 Claims Act "final and conclusive,” revokes Tucker Act jurisdiction to hear such claims.[3]
Regarding jurisdiction, we think United States v. Babcock, 250 U.S. 328 (1919), on point. Babcock dealt with an Army officer’s claim for the loss of a horse under an early military claim statute from which 31 U.S.C. §§240-243 (including the finality provision of 31 U.S.C. §242) is derived.[4] The predecessor statute, Act of March 3, 1885, ch. 335, 23 Stat. 350, provided that Treasury officials were to ascertain and pay the claims of military personnel for loss or damage to their private property while in the military if the Secretary of War determined the articles were reasonable and necessary to duty. Once decided, all claims were "finally determined” and not to be reopened. The Secretary of War had determined Babcock’s horse to be reasonable and necessary to duty, but the Comptroller of the Treasury declined to pay the claim. In an action before this court (reported at 53 Ct. Cl. 629 (1918)), we allowed recovery for *756 the value of the horse, $200. On defendant’s appeal to the Supreme Court, the plaintiff argued jurisdiction in this court had been proper. The Supreme Court, however, reversed. The Court reasoned that:
These general rules are well settled: (1) That the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts. [Citations omitted.] (2) That where a statute creates a right and provides a special remedy, that remedy is exclusive. [Citations omitted.] Still the fact that the right and the remedy are thus intertwined might not, if the provision stood alone, require us to hold that the remedy expressly given excludes a right of review by the Court of Claims, where the decision of the special tribunal involved no disputed question of fact and the denial of compensation was rested wholly upon the construction of the act. [Citations omitted.] But here Congress has provided, "That any claim which shall be presented and acted on under authority of this act shall be held as finally determined, and shall never thereafter be reopened or considered.” These words express clearly the intention to confer upon the Treasury Department exclusive jurisdiction and to make its decision final. * * *
* * * * *
The Court of Claims was [therefore] without jurisdiction * * *. [250 U. S. at 331-332].
See also Fattore v. United States, 160 Ct. Cl. 666, 672-674, 312 F. 2d 797, 801-802 (1963). Citing Babcock, at least one federal appellate court has concluded the finality provisions of a later military claims statute (which evolved from that in Babcock) barred judicial review of an Army claims decision. See Preferred Insurance Co. v. United States, 222 F. 2d 942, 947 (9th Cir.), cert. denied, 350 U. S. 837 (1955) (Military Personnel Claims Act of 1945, ch. 135, 59 Stat. 225). The 1964 Claims Act is itself derived from both the Military Personnel Claims Act of 1945 and the 1885 Act. See note 4, supra. The relevant language in both earlier statutes, that relating to the ascertainment of a claim and that relating to the finality of the claims decision, is similar to the present statutory version. Moreover, the available legislative history regarding the 1964 Claims Act indicates its derivation from the earlier claims statutes and suggests *757 that judicial review of claims decisions would not be available. See S. Rep. No. 1423, 88th Cong., 2d Sess. 6, 9 (1964). reprinted in [1964] U. S. Code Cong. & Ad. News 3407, 3412, 3415. At least one reported federal court decision has reached this conclusion as to 31 U.S.C. §242, see Macomber v. United States, supra n.4. Relying in part on Macomber, other federal courts have reached the same conclusion as to the related and identical finality language of 10 U.S.C. § 2735 (1976), which is applicable to military claims brought under 10 U.S.C. §§2731-2737 (1976). See Bryson v. United States, 463 F. Supp. 908, 910 (E.D. Pa. 1978); Towry v. United States, 459 F. Supp. 101, 106-108 (E.D. La. 1978), aff’d, 620 F. 2d 568 (5th Cir. 1980), cert. denied, 449 U.S. 1078 (1981). But cf. Welch v. United States, 446 F. Supp. 75, 77-78 (D. Conn. 1978) (10 U.S.C. § 2735 does not prevent redeterminations of questions of law).
Plaintiffs best argument to the contrary appears to be that courts have not always adhered to statutory provisions purporting to preclude judicial review. E.g., Johnson v. Robison, 415 U. S. 361, 366-368, 373-374 (1974). Those cases, however, generally deal with situations where the particular statute operates to preclude constitutional challenges or where the legislative intent to preclude review is unclear. This plaintiffs claim presents no serious constitutional challenge to the statute or the regulations. Admittedly, the "final and conclusive” language of 31 U.S.C. § 242 does not unambiguously provide that no judicial review is to occur. Nevertheless, when 31 U.S.C. § 242 is read in light of that provision’s legislative history and the decisional law interpreting both the predecessor provisions from which Congress derived the 1964 Claims Act and a related (and identical) provision of present law, we concur in the view of Macomber, supra, that 31 U.S.C. §242 precludes judicial review of Army claims decisions made under the 1964 Claims Act.
The present controvery is not unlike Fountain v. United States, 192 Ct. Cl. 495, 427 F. 2d 759 (1970), cert. denied, 404 U. S. 839 (1971). In Fountain, the plaintiff sought recovery of relocation expenses arising from an urban renewal project. An administrative decision which denied plaintiffs claim was to be "final and conclusive” under 24 C.F.R. *758 § 3.104(c) (1966). In dismissing plaintiffs complaint on jurisdictional grounds, we wrote:
* * * We are aware of decisions such as Tracy v. Gleason, 379 F.2d 469 (D.C. Cir. 1967), giving other finality language its literal scope and no more, but we do not think any unsympathetic interpretation of the present statute can change the result here because the instant administrative decision as to eligibility appears to be exactly of the kind the Congress meant to keep out of the courts. United States v. Augenblick, 393 U. S. 348 (1969), warns us to respect finality language in cases other than of a flagrant constitutional violation, a standard we have subsequently sought to apply as a benchmark for the scope of our judicial review of court-martial sentences in Gallagher v. United States, 191 Ct. Cl. 546, 423 F.2d 1371 (1970). * * * [192 Ct. Cl. at 498-499, 427 F. 2d at 761.]
Cf. Baker v. United States, 225 Ct.Cl. 668 (1980) (finality provision of 38 U.S.C. § 211(a) (1976) bars claims for veteran’s benefits); Burton v. United States, 205 Ct. Cl. 846 (1974) (finality provision of 42 U.S.C. § 405(h) bars social security claims). We think our majority comments in Fountain apt. However, even if we take the scope of review to be that expressed in the dissent in Fountain, supra, viz., that such finality language allows judicial review where a plaintiff shows a substantial departure from important procedural rights, a misconstruction of the statute, or an error going to the heart of the administrative process, the petition in No. 356-78 must nonetheless be dismissed. Plaintiff Shull has made no such showing here, and thus, 31 U.S.C § 242 bars this action. We need not, therefore, reach defendant’s alternate position that 31 U.S.C. § 241(a) cannot be fairly read to mandate payment of money damages.[5]
*759 C. No. 333-78
Damage to Personal Property Shipped from Vietnam to the Philippines
Pursuant to plaintiffs military entitlement, other of his personal property was picked up in Vietnam for shipment to the Philippines in June 1973. That property arrived in the Philippines in December 1973. Inspection revealed some of the property was lost, broken, or water damaged during shipment. On April 8,1974, plaintiffs wife, through a power of attorney, filed a claim against the United States for this loss in the amount of $6,339.17. On the claim form, plaintiffs wife indicated no private insurance was applicable to the loss. Plaintiffs claim was eventually approved for payment in the amount of $4,785.78 under the 1964 Claims Act, supra, and 32 C.F.R. §536.27 (1974). Plaintiff was apparently paid this amount. Contemporaneously, plaintiff also filed a duplicate claim for the entire loss with his insurer, USAA. USAA eventually determined only the loss and water damage claims were covered. Before the loss and water damage claims were paid by USAA, however, the overlap in coverage was discovered. Plaintiff was informed that appropriate adjustment would be made. USAA eventually sent plaintiff a check for $295.33, the difference between what USAA would have paid on the loss and water damage claim, $3,165.50, and the $2,870.17 actually paid by the Government for those portions of plaintiffs claim.[6] Plaintiffs petition in No. 333-78 followed. Defendant originally counterclaimed for $2,870.17. Defendant does not now pursue this counterclaim, as USAA has since paid that amount to the Government.
The claim in No. 333-78, like that in No. 356-78, supra Part B, is purportedly founded on 31 U.S.C. §§ 240-243. We conclude that the finality provision of 31 U.S.C. §242, whether read per the majority comments in Fountain or per the dissent, similarly bars the claim in this petition. Plaintiff Shull has made no showing adequate to found suit here even were we to embrace the broader scope of review *760 the Fountain dissent enunciates. Accordingly, defendant’s motion for summary judgment should be granted as to No. 333-78. As to defendant’s counterclaim, that should be dismissed as moot.
D. No. 409-78
Mailing of Allotment to Wrong Address
While serving on active duty on July 8, 1970, plaintiff opened a checking account with the Bank of America for his wife, Milagres Shull. His wife was then residing in the Philippines. A few days later, on July 12, 1970, plaintiff initiated a "Class E” allotment whereby $75 per month was to be deducted from his military pay and sent for deposit at the bank. A deduction was made and reflected on plaintiffs payroll vouchers from August through December 1970.
During October and November 1970, plaintiff drew a series of checks against the account, but all of them were dishonored for lack of sufficient funds. Evidently, the Army Finance Center mailed the checks to "NT and SA MIL Banking Dept. No. 1005, San Francisco, California 94120,” a different address from that purportedly designated by plaintiff.[7] Consequently, overdraft charges totaling $20 were levied against plantiff s account. The bank remitted $225 ($75 for each of September, October, and November) to the Army because the bank was unable to locate the plaintiffs account. The Army has since paid this $225 to plaintiff.
Plaintiff closed out the account in December 1970. In 1971 he made inquiries to the bank in an effort to trace his lost funds. Before the bank answered his inquiries, plaintiff filed an administrative claim against the United States in May 1971, seeking $687.67 for the overdraft charges and other "related” damages. That claim was denied in June 1971 under the authority of applicable regulations, which precluded payment for damages caused by fiscal operations of the Army. See, e.g., AR 27-20, Paragraph 3-5(h) (Septem *761 ber 18, 1970). See also 32 C.F.R. § 536.15(q) (1971). Also during June 1971, the bank located plaintiffs money in one of its miscellaneous accounts and refunded the remaining money to him. Plaintiff was not, however, refunded the overdraft charges. The petition in No. 409-78 was filed September 14, 1978, seeking $342.25 for the charges and other damages.
Under 28 U.S.C. § 2501 (1976), a plaintiff has 6 years from the date a claim accrues to bring an action in this court. At the latest, this claim had fully accrued by May 1971 when plaintiff filed his claim with the Army. Although the statute of Imitations was tolled while plaintiff was on active duty, see 50 App. U.S.C. § 525, the statute began to run once plaintiffs active duty ended in June 1972. Six years later, in June 1978, the statute expired without plaintiffs having brought suit. It follows that this petition is now time barred and beyond our jurisdiction. Accordingly, defendant’s summary judgment motion as to No. 409-78 should be granted.
E. No. 352-78
Claim for Lost Mail
On January 15, 1977, plaintiff commenced a 12-day period of active duty for training with the 66th Military Intelligence Group, McGraw Kaserne, Munich, West Germany. Using the Post Exchange privileges available during active duty, plaintiff purchased several items of stereo equipment. He then mailed the items in three packages at the local Army Post Office (APO). The parcels were addressed to plaintiff at an APO in Iran. Each parcel was insured for $200, the maximum allowed by regulation. Plaintiff alleges none of the parcels was ever delivered.
Plaintiff first presented a claim to the Army for the lost packages based on a replacement value in Iran of $2,556.03. That claim was denied in that applicable regulations, Chapter 3, AR . 27-20, supra, allowed recovery from the army for lost mail only when the claimant established that the loss or damage had occurred while the mail was in the custody of the mail clerk of an Army unit. Plaintiff, however, had mailed the packages and was to receive them *762 at an APO; and as all APOs are organizations of the United States Postal Service, the involvement of an Army unit mail clerk could not be proved. See generally AR 65-1, Paragraph 12-2 (September 17, 1976). The Army therefore informed plaintiff that his claim should be brought against the Postal Service. Upon submission of the claim to the Postal Service, the claim in excess of $600 was denied in that applicable Postal Service regulations limited the liability of the Postal Service to the amount of insurance which had been purchased.[8] The petition in No. 352-78 followed.
Plaintiff has cited no statute or regulation which can be fairly read to mandate compensation for the alleged loss of mail and thus fails to come within our jurisdictional statute, 28 U.S.C. §1491. Although plaintiff complains of the unfairness in limiting the Army’s liability to circumstances in which the custody of an Army unit mail clerk can be proved, AR 27-20, Chapter 3 is clearly within the ambit of the military claim statute on which it is based, 10 U.S.C. § 2733 (1976).[9] The relevant portion of the statute, 10 U.S.C. § 2733(a)(2) (1976), and supporting flush language establish that
(a) Under such regulations as the Secretary concerned may prescribe, he * * * may settle, and pay in an amount not more than $25,000, a claim against the United States for—
*****
(2) damage to or loss of personal property, including property bailed to the United States and including registered or insured mail damaged, lost, or destroyed by a criminal act while in the possession of the Army, Navy, *763 Air Force, Marine Corps, or Coast Guard, as the case may be * * *
either caused by a civilian officer or employee of that department, or the Coast Guard, or a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be, acting within the scope of his employment, or otherwise incident to noncombat activities of that department, or the Coast Guard.
Both the literal language and general tenor of the statute are that only a limited type of claim may be paid, viz., one for damages caused by Armed Service employees acting incident to noncombat activities of the military department. By limiting liability for lost mail to circumstances in which Army (i.e., military rather than Post Office) custody can be proved, the regulation is consistent with the clear statutory intent. As neither the statute nor implementing regulations can be fairly read to mandate compensation to this plaintiff, we need not reach defendant’s alternate position that the finality provision of 10 U.S.C. § 2735 (1976) would bar our jurisdiction.
Similarly, we have little doubt that PSMD § 162.22, supra, which limits Postal Service liability for these parcels to a maximum of $200 each, is a valid exercise of the Postal Service’s general powers to settle and compromise claims and to otherwise carry on its functions. See 39 U.S.C. § 401(8) and (10) (1976). We have consistently held that the United States is liable to the owners of lost or damaged mail only to the extent that it has consented to be liable. Marine Insurance Co. v. United States, 187 Ct. Cl. 621, 410 F. 2d 764 (1969); Twentier v. United States, 124 Ct. Cl. 244, 109 F. Supp. 406 (1953). See also Garrett v. United States, 215 Ct. Cl. 968 (1977). Twentier v. United States adequately demonstrates this principle. Twentier involved an action by a corporation for damages caused by the loss of and damage to a shipment of fourth class mail. The shipment consisted of jewelry mailed from an Army Post Office without the protection of insurance. We held that the Government’s liability was defined solely by the Postal laws and regulations and that under those regulations no liability existed for loss or damage due to unprotected mail. The analogy to *764 Twentier and similar cases as to Postal Service liability is inescapable.
Thus, plaintiff has no claim founded on the relevant Army regulation or authorizing statute; nor can he, under Postal Service regulations, recover amounts in excess of the $600 in insurance proceeds he has already received. It follows that plaintiff has no claim within our jurisdiction.[10] Accordingly, defendant’s motion for summary judgment in No. 352-78 should be granted.
F. No. 332-78
Suit for Army Back Pay
On June 26, 1972, plaintiff was separated from active duty with the Army. Plaintiff now claims the Army owes him back pay and allowance in the amount of $1,252.35. Plaintiff also seeks costs of prosecuting his claim, in the sum of $1,260.51. Thus, his petition prays for relief in the amount of $3,512.86.
Plaintiffs claim is barred by the 6-year statute of limitations. Plaintiff was separated from active duty on June 26, 1972; the petition was filed on July 24,1978. Since plaintiffs claim for duty pay accrued upon his discharge, Kirby v. United States, 201 Ct. Cl. 527, 531 (1973), cert. denied, 417 U. S. 919 (1974), and the instant petition was filed more than 6 years thereafter, his claim is untimely. Therefore, plaintiff fails to state a claim within the jurisdiction of this court. Accordingly, defendant’s summary judgment motion as to No. 332-78 should be granted.
it is therefore ordered that defendant’s motions for summary judgment in Nos. 16-, 356-, 333-, 409-, 352-, and 332-78 be and are hereby allowed, while plaintiffs cross-motions for summary judgment in the same cases are hereby denied. The petitions are dismissed, it is also ordered on the court’s own motion that defendant’s counterclaim in No. 333-78 be and is hereby dismissed as moot.

 Due to the length of 37 U.S.C. § 406 (1970), we have merely summarized the statute’s effect. We have followed a similar course elsewhere in this order when reproduction of other lengthy provisions would serve no useful purpose. Subsequent statutory references are to the 1970 edition of the United States Code, except as indicated. Subsequent references to various regulations are as noted.

 Presumably the regulations discussed in the text are designed in part to prevent the sort of difficulties encountered here when plaintiff brings this claim after the record has grown cold, memories have dimmed, and the whereabouts of critical witnesses have become uncertain. Moreover, we note the Army, as the employing agency, is in a far better postion than this court to ascertain whether these materials were in fact necessary to the performance of plaintiffs official duties.

 This is apparently not the first time defendant has made these arguments with regard to the 1964 Claims Act or closely related military claims provisions we discuss infra, 10 U.S.C. §§ 2731-2737. See Brown v. United States, 215 Ct. Cl. 957, 958 & n.2, 959 & nn. 2-3 (1977).

 The evolution of the various military claims statutes is adequately recounted in Fidelity-Phenix Fire Ins. Co. v. United States, 111 F. Supp. 899, 902 & n. 2, 903 (N.D. Cal. 1953), aff'd sub nom. Preferred Ins. Co. v. United States, 222 F. 2d 942 (9th Cir.), cert. denied, 350 U. S. 837 (1955), and Macomber v. United States, 335 F. Supp. 197 passim (D. R.I. 1971). We need not repeat those discussions here.

 Had the Secretary of the Army as the deciding official authorized payment to plaintiff, and then the appropriate disbursing officer refused to pay, a different jurisdictional question would be present. See, e.g., Regnier v. United States, 92 Ct. Cl. 437 (1941); Dierking v. United States, 92 Ct. Cl. 141 (1940); Jonitz v. United States, 89 Ct. Cl. 155 (1939); Curran v. United States, 65 Ct. Cl. 26 (1928).

 Thus, $1,900 of the Army’s $4,785.78 claim settlement was attributable to the breakage claim for which plaintiff had no private coverage.

 Plaintiff claims the allotment form directed the checks to be sent to the Bank of America branch office at 504 Montgomery Street in San Francisco. The allotment form has since become lost. We assume arguendo plaintiffs allegation to be correct.

 Postal Service Manual (Domestic) (PSMD) § 162.22 (1976) limits liability for insured mail to $200 per item. As plaintiff purchased the maximum insurance on each of three packages, Postal Service liability aggregated $600. Plaintiff does not allege he has not received this amount on his claim, reducing the outstanding claim from $2,556.03 to $1,956.03.

 10 U.S.C. § 2733 generally applies to loss by any person incident to the noncombat activities of the Armed Services. The 1964 Claims Act, supra, 31 U.S.C. §§ 240-243, relates to the losses of Government officers incident to their Government service. During the years relevant to these petitions, the Army regulations applicable to claims under 10 U.S.C. § 2733 were Chapter 3, AR 27-20 and 32 C.F.R. §§ 536.12-24b, while those applicable to the 1964 Claims Act were Chapter 11, AR 27-20 and 32 C.F.R. § 536.27. Appropriate claims could be considered under each set of regulations, lee, e.g„ 32 C.F.R. §§ 536.16(a) and 536.27(a)(2) (1975).

 Narrow as the relief afforded by the Army and Postal Service regulations appears to be, that is for Congress or the agencies, and not this court, to remedy.