**FRANK MASTOLONI & SONS, INC., Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Nan Duskin, Inc. and Jewelers Mutual Insurance Company, Defendants.**

No. 80 Civ. 6816 (KTD).

United States District Court,
S. D. New York.

Aug. 30, 1982.

Tell, Cheser, Breitbart & Lefkowitz, New York City, for plaintiff; Franklin D. Tell, New York City, of counsel.

John S. Martin, Jr., U. S. Atty. for the S. D. of New York, New York City, for defendant United States Postal Service; Jonathan A. Lindsey, Asst. U. S. Atty., New York City, of counsel.

Abrams & Martin, P. C., New York City, for defendants Nan Duskin and Jewelers Mut.; Steven Jay Bassin, New York City, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Frank Mastoloni & Sons, Inc. ("Mastoloni"), a New York wholesale jeweler, brought this action against defendants United States Postal Service ("Postal Service"), Nan Duskin, Inc. ("Nan Duskin"), a specialty store located in Philadelphia, Pennsylvania, and Nan Duskin's insurer, Jewelers Mutual Insurance Company ("Jewelers Mutual") to recover $25,000 for its stolen necklace. In early December, 1979, Nan Duskin's jewelry buyer and manager, Roberta Spivak, requested that Mastoloni ship to her store a South Sea cultured pearl necklace with an approximate value of $25,000. Nan Duskin and Mastoloni had been doing business together for many years.[1] On December 5, 1979, plaintiff delivered to the Post Office in New York City, a parcel containing the requested necklace and a consignment memorandum, a standard printed form commonly received by Nan Duskin. Handwritten on the memo is a description of the necklace and its minimum resale price of $25,000. Plaintiff's Exhibit 1. The printed portion of the memo outlines Nan Duskin's agreement either to sell the necklace at a price of at least $25,000 or to return the goods to Mastoloni. *Id.* Further, Nan Duskin agreed "to keep the goods fully insured, while in its possession, against all applicable risks." *Id.*

Acceptance of the goods was deemed an acceptance of the terms and conditions stated in the memo. *Id.*

As per their usual business custom, Mastoloni sent the package, via registered mail, to the Philadelphia Post Office. Believing that the Post Office only insured packages up to $10,000, Mastoloni would never place a value above $10,000 within its firm mailing book which is the registered mail form for large scale users. Mastoloni apparently learned through its insurer, Lloyds of London, that the Post Office would pay the value of any lost or damaged item up to $10,000 and that Mastoloni's insurer would indemnify the plaintiff for any loss above this amount. Mastoloni Deposition at p. 13. For unexplained reasons, therefore, Mastoloni would only place 10 percent of an article's value in its mailing book provided the value of the article was over $10,000. *Id.* Accordingly, the value entered for the necklace mailed to Nan Duskin was $2,500.

Nan Duskin maintained a special post office box at the Philadelphia Post Office for all of its registered mail packages and employed several authorized messengers to pick up its registered mail. A representative of Nan Duskin accompanied Mr. Fred Margulies to the Post Office to introduce him to the registry clerk and to authorize Margulies' acceptance of packages on Nan Duskin's behalf. Defendants Nan Duskin and Jewelers Mutual's Exhibit 1, Deposition of Leroy Davis at pp. 14, 39. Fred Margulies was fired several days prior to December 6, the date the package apparently was available for pick up in Philadelphia. Nan Duskin, however, failed to notify the Post Office that Margulies was no longer authorized to receive its packages. It appears that Margulies went to the registered mail window on December 6, 1979 and took delivery of the plaintiff's necklace, along with several other packages from Nan Duskin's other suppliers. Rather than signing his own name, Margulies scribbled what appears to be "Parker." Defendants Nan

---

1. The affidavit of Raymond Mastoloni, the president of the plaintiff, attached to Plaintiff's Notice of Motion for Summary Judgment evidences a long standing business relationship between Mastoloni and Nan Duskin. This has not been denied.

Duskin and Jewelers Mutual's Exhibit 3. The registry clerk, Leroy Davis, who recognized Margulies, did not check Margulies' signature, in contravention of official postal policy. It seems that the registry clerks at this branch whenever they dealt with a familiar customer did not follow this official requirement. Defendants Nan Duskin and Jewelers Mutual's Exhibit 1 at pp. 15–16, 21–22.

Approximately two hours after Margulies took delivery, the authorized Nan Duskin messenger arrived at the Philadelphia Post Office to pick up the same packages. The messenger learned of Margulies' activities and notified Nan Duskin. Roberta Spivak immediately phoned Mastoloni, admitted Nan Duskin's full responsibility and promised full compensation for the loss of plaintiff's necklace. Affidavit of Roberta Spivak at p. 4. Spivak requested that plaintiff send a copy of the consignment memo to Nan Duskin since the original memo which accompanied the necklace was now in Margulies' possession. Plaintiff complied with this request. *See* Plaintiff's Exhibit 1.

It appears that subsequent to this time, Everett Lamond, the adjuster from Jewelers Mutual who handled this Nan Duskin claim, advised Nan Duskin that the claim for the loss of this necklace would not be paid. Plaintiff's Exhibit 5 at p. 40. On September 30, 1980, Bruce Long, the treasurer of Nan Duskin, wrote plaintiff and voiced his embarrassment for his company's failure to have paid Mastoloni's claim and promised that action would soon be taken to resolve the problem. Plaintiff's Exhibit 3. To date, the claim has not been paid.[2]

Plaintiff filed suit against Nan Duskin alleging the defendant's absolute liability for the $25,000 necklace pursuant to the "all risk" consignment memo. Plaintiff also joined Jewelers Mutual as a co-defendant claiming that pursuant to clause 3(c) of the insurance policy it issued to Nan Duskin,

Mastoloni has a direct right of action against the insurer either (i) because a bailor has a direct right of action on the bailee's policy or (ii) because plaintiff is a third-party beneficiary of the insurance contract. Affidavit of Franklin Tell at p. 4, Plaintiff's Exhibit 7, clauses 3(c), 10. The Postal Service was also sued as a co-defendant for its alleged failure to fulfill its registered mail contract. Plaintiff alleges that the indemnity contract, which concededly was voided when plaintiff entered a false value for the necklace, is separate from the registered mail contract.

Various summary judgment motions are now before me. The Postal Service moves for summary judgment against plaintiff claiming that because plaintiff failed to disclose the true value of the package the registered mail contract was void. In further support of its motion, the Postal Service cites its own regulations which required that Nan Duskin notify the postal authorities that Margulies was no longer authorized to receive packages. Accordingly, the Postal Service argues, since it was not notified it cannot be held liable by the plaintiff. The Postal Service's motion for summary judgment is opposed by Nan Duskin, Jewelers Mutual and the plaintiff.

Jewelers Mutual also moves for summary judgment, claiming that it cannot be found liable until such time as Mastoloni secures a judgment against Nan Duskin. Finally, Mastoloni moves for summary judgment against Nan Duskin.

## DISCUSSION

### A. Postal Service's Liability

In support of its motion for summary judgment, the Postal Service relies on the Domestic Mail Manual ("DMM") which allows senders to insure against the risk of loss by providing for indemnification on registered mail.[3] Section 911.251 of the

---

**2.** Apparently, the claims of other suppliers whose merchandise was also taken by Margulies have been paid. None of the other claims were as large as Mastoloni's and Nan Duskin

paid those claims out of its own pocket. Plaintiff's Exhibit 5, at pp. 41–42.

**3.** The DMM provides an exception to the Federal Torts Claims Act, 28 U.S.C. § 2680(b)

DMM, appended to the Postal Service's Answer, provides that

> The sender must tell the postal clerk (or enter on the firm mailing bill if a firm mailer) the FULL value of mail matter presented for registration .... No indemnity will be paid for any matter on which the full value is not declared.[4]

By entering the necklace at 10 percent of its true value in the mailing book, Mastoloni paid a lesser mailing fee and violated the terms of the registered mail contract. Plaintiff contends that the Postal Service should not escape complete liability solely because plaintiff failed to state the true amount of the necklace on the registered mail form, but should instead be liable for $2,500, the value of the necklace as registered in the mail contract. Plaintiff, however, cites no authorities in support of this argument.

▮ The Postal Service is only liable to the extent that it agrees to be liable. *Ridgway Hatcheries, Inc. v. United States*, 278 F.Supp. 441, 443 (N.D.Ohio 1968); *Taylor v. U. S. Post Office Dept.*, 293 F.Supp. 422, 423 (E.D.Mo.1968). In the instant case, the Postal Service only agreed to be liable if the true value of the parcel was entered in the firm mailer and thus declared to the postal authorities. Accordingly, plaintiff's conceded failure to enter the known value of the necklace precludes any indemnification by the Postal Service.

▮ Defendants Nan Duskin and Jewelers Mutual join plaintiff's challenge to the Postal Service's summary judgment motion and argue that the indemnification contract is separate and apart from the registered mail contract. They assert that the plaintiff's violation of the indemnification contract does not void the registered mail contract; therefore, the Postal Service assumes liability for violating the registered mail contract and is liable for $2,500. This argument is unpersuasive. Research does not

disclose any support for the argument that the registered mail contract is a separate entity from the indemnification contract. Furthermore, this distinction is inconsistent with the purpose of registered mail as outlined in the DMM. Registered mail in essence is an exception to the Federal Torts Claims Act and allows post office liability to attach for negligent loss or damage to mail. Admittedly, the fee plaintiff paid for indemnification, $5.70, is separate from the $.67 postage fee plaintiff paid. Yet, if plaintiff recovers the $2,500 he requests, an indemnification would result and plaintiff would have successfully manipulated postal regulations to suit its purpose. In addition, even if the registration contract is independently viable, there is no showing that damage resulted from a breach of the registration contract or that the Postal Service's delivery of the necklace to Margulies constituted a breach of this contract. The Postal Service was not notified that Margulies was no longer authorized to accept Nan Duskin's packages. Plaintiff's Exhibit 5 at p. 27. Nan Duskin's oversight renders the registry clerk's failure to check Margulies' signature immaterial, especially in light of Nan Duskin's failure to complain to the Registry Clerk that registered mail was turned over to familiar authorized messengers without handwriting checks. Defendants Nan Duskin and Jewelers Mutual's Exhibit 1 at p. 51.

In *Taylor*, 293 F.Supp. 422, the Postal Service's motion for summary judgment was granted on the basis of plaintiff's failure to comply with postal service regulations. The court stated that "in contract terminology, these regulations establish certain conditions precedent to the government's performance. Plaintiff has failed to comply therewith and accordingly cannot as a matter of law recover on his claim." 293 F.Supp. at 423. This holding is equally applicable to the case at bar.

which precludes government liability for "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter."

4. The DMM is incorporated by reference in the Code of Federal Regulations and therefore is deemed published in the Federal Register (39 C.F.R. § 111.1 (1981)). Mastoloni is presumed to have notice of its contents. 44 U.S.C. § 1507 (1976).

Alternatively, defendants Nan Duskin and Jewelers Mutual argue that the Federal Torts Claims Act does not apply because negligence was not present in this case. They argue that the failure of the registry clerk to adequately check signatures was a standard operating procedure, rather than negligence. The Postal Service cannot avoid liability, defendants argue, when suit is grounded on a standard operating procedure and not negligence.

■ This argument is without merit. Accepting, *arguendo*, that negligence is not at the heart of this matter, that cannot eradicate the fact that the registered mail contract is void because plaintiff failed to fulfill the conditions precedent to indemnification. The Postal Service cannot be held liable for breaching an invalid contract. Further, a standard operating procedure can be negligence. Defendants have not provided any convincing argument, nor cited any cases which would support a finding that negligence was not involved in the Postal Service's failure to check signatures.

■ Defendants Nan Duskin and Jewelers Mutual further argue that Nan Duskin's status as a third-party beneficiary of the registered mail contract defeats the Postal Service's motion. This argument is frivolous. A contract that is unenforceable by the plaintiff cannot be enforced under a third-party beneficiary theory by cross claimants. *See United States v. Industrial Crane & Mfg. Corp.*, 492 F.2d 772, 774 (5th Cir. 1974); *National Benefit Fund for Hospital & Health Care Employees v. Presbyterian Hospital*, 448 F.Supp. 136, 138 (S.D.N.Y.1978). Further, cross claimants cannot recover on the basis of the Postal Service's purported negligence, pursuant to the Federal Tort Claims Act. *See Sportique Fashions, Inc. v. Sullivan*, 597 F.2d 664, 665 (9th Cir. 1979); *Marine Insurance Co. v. United States*, 410 F.2d 764, 765 (Ct.Cl.1969).

Finally, defendants Nan Duskin and Jewelers Mutual argue that a material question of fact exists as to the true value of the necklace. They assert that the true value of the necklace is uncertain and could range from $2,500 to $25,000. They argue that if the lower value is correct, then the registered mail contract is valid. Accordingly, they assert that defendant Postal Service's motion for summary judgment should be denied since the value of the necklace remains unresolved.

■ This argument is totally unpersuasive. Even though a material question of fact will defeat any motion for summary judgment, *Contemporary Mission, Inc. v. U. S. Postal Service*, 648 F.2d 97, 107 (2d Cir. 1981), no such question is present here. The $25,000 minimum value of the necklace cannot be controverted. This is the value defendants accepted without challenge when Nan Duskin received the copy of the consignment memo requested by Ms. Spivak. This is the value plaintiff now seeks from the defendants. Defendants raise no material factual question as to the value of the necklace. Accordingly, defendant Postal Service's motion for summary judgment is granted.

## B. Nan Duskin's Liability

Nan Duskin attempts to shield itself from liability by claiming that it never "received" the package and the consignment memo from Mastoloni. This defendant contends that Margulies was not an employee when he picked up the plaintiff's necklace and therefore Nan Duskin is not responsible for his acts. Nan Duskin's argument has two fatal flaws: one, the store's failure to notify the Post Office that Margulies was no longer authorized to accept its packages; two, Nan Duskin's later acknowledgement of its liability and agreement to accept full responsibility for the loss.

■ The fact that Margulies had been fired when he signed for the necklace does not abrogate Nan Duskin's legal receipt of plaintiff's parcel. Margulies was empowered to accept packages on Nan Duskin's behalf while he was in the store's employ. After terminating Margulies' direct authority to act as its agent, Nan Duskin must then have taken appropriate affirmative steps to destroy Margulies' apparent authority in order to defeat its own liability.

The general rule is that the acts of an agent, within the apparent scope of his authority, are binding on the principal as against one who had formerly dealt with him through the agent and who had no notice of the revocation, because such a person is justified in assuming the continuance of the agency relationship. (citations omitted)

3 Am.Jur.2d Agency § 44 (1962), *quoted in LaBonte v. Preyer*, 300 F.Supp. 1078, 1081 (E.D.Wis.1969). The Post Office, without notice from Nan Duskin, had no reason to believe that Margulies' authority had expired. Roberta Spivak acknowledged, "no one from Nan Duskin ever advised the Post Office that Margulies had been fired and was no longer authorized to accept any further registered-mail shipments. It was complete carelessness on our part. Certainly the Post Office had no way of knowing that Margulies had been fired." Affidavit of Roberta Spivak at p. 3.

█ If an employer does not take reasonable action to inform third parties that its agent lacks any authority to act on its behalf, the principal is legally and equitably bound by the agent's action. *See United States v. Uniroyal, Inc.*, 300 F.Supp. 84, 95 (S.D.N.Y.1969); Restatement (Second) of Agency § 125 (1958).

█ Even if Margulies' status as an agent at the time of the theft is in question, Nan Duskin's later ratification of his act cements its liability. "[R]atification is the adoption or affirmance by a person of a prior act which did not bind him, but which was done or professed to be done on his account, thus giving effect to the act, as to some or all persons, as if originally authorized." 3 Am.Jur.2d Agency § 160 (1962). Bruce Long's September 30, 1980 letter to Mastoloni voiced his embarrassment "that your invoice in the amount of $25,000. has not yet been paid." Plaintiff's Exhibit 3.

Nan Duskin's affirmance of this debt is further supported by Roberta Spivak's November 10, 1980 letter in which she agreed for Nan Duskin "to be responsible for any loss of the necklace until its safe return to you." Plaintiff's Exhibit 4. These letters establish Nan Duskin's knowledge of all material facts and constitute ratification of Margulies' apparent authority. *See Hydrolevel Corp. v. American Society of Mechanical Engineers*, 635 F.2d 118, 125 (2d Cir. 1980) (Lumbard, J.), *aff'd*, —— U.S. ——, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), (principal ratified agent's fraud even without retention of benefits); Restatement (Second) of Agency § 93 (1958).

Nan Duskin cannot now effectively raise Margulies' firing to escape liability. Even if Margulies lacked apparent authority to accept Mastoloni's necklace and consignment memo and bind Nan Duskin by his acceptance, Nan Duskin's later ratification sealed its own fate. Accordingly, Mastoloni's motion for summary judgment against Nan Duskin is granted.[5]

C. Jewelers Mutual Insurance Company's Liability

█ Jewelers Mutual argues in its summary judgment motion that plaintiff cannot properly assert a direct action against it until plaintiff secures a judgment against Nan Duskin. My decision to grant Mastoloni's summary judgment against Nan Duskin moots Jewelers Mutual's motion. Now that the liability of Nan Duskin has been established, it is unnecessary to resolve the question of the legal propriety of Mastoloni's inclusion of Jewelers Mutual in its complaint.

In sum, Mastoloni's motion for summary judgment is granted against Nan Duskin; the Postal Service's motion for summary judgment is granted and the summary

**5.** Defendants Nan Duskin and Jewelers Mutual argue that if state law is applied, then the law of Pennsylvania and not New York is applicable. I need not resolve this choice of law conflict because my decision is based on fundamental concepts of agency law rather than on a particular state's law. Furthermore, both New York and Pennsylvania subscribe to these general agency motions. *See Universal Computer Systems, Inc. v. Medical Services Ass'n*, 628 F.2d 820, 823 (3d Cir. 1980); *Greene v. Hellman*, 51 N.Y.2d 197, 412 N.E.2d 1301, 433 N.Y.S.2d 75 (1980).

judgment motion of Jewelers Mutual is mooted.

SO ORDERED.